ROSHAN D. SHAH, ESQ.
**SHAH LAW GROUP, LLC**
**ATTORNEYS AT LAW**
1040 Broad Street, Suite 304
Shrewsbury, New Jersey 07702
Telephone: (732) 398-6545
Facsimile: (732) 576-0027
*Attorneys for Plaintiff Tara Mattison, Individually and On Behalf Of Those Similarly Situated*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON VICINAGE**

| | |
|---|---|
| Tara Mattison, Individually And On Behalf Of Those Similarly-Situated,<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER J. AVETA, IN BOTH HIS INDIVIDUAL AND OFFICIAL CAPACITIES, JOHN DOES1-10, ABC CORPORATIONS1-10,<br><br>Defendants. | Civil Action<br><br>**VERIFIED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tara Mattison, individually and on behalf of those similarly situated, by and through her attorneys, Shah Law Group, LLC, hereby asserts the following allegations and claims against Defendant Christopher J. Aveta in both his individual and official capacities:

**PRELIMINARY STATEMENT**

1. Since becoming President of the Middletown Township Board of Education ("MTPS") on January 6, 2026, Aveta has required individuals wishing to speak at public meetings to disclose their "group affiliation." Such a compelled disclosure clearly and unequivocally violates the First Amendment, which recognizes an individual's right to

privacy in his or her associations. Despite written notice that his compelled disclosures violate the United States Constitution, Aveta has continued to insist on including the requirement in that portion of MTPS's meeting agendas which govern public comment. The violation is exacerbated by the fact that MTPS also requires individuals to disclose their name and municipal residence, broadcasts this information on YouTube.com, and maintains a video record.

Mattison, a Middletown resident, wishes to speak at MTPS's meetings, especially with respect to the ongoing debate concerning school closures. However, Mattison is a member of certain social and advocacy groups and does not wish to disclose her affiliation with them as a condition of speaking. To avoid such disclosure, Mattison has refrained from speaking at MTPS meetings, despite her urgent desire to weigh in on school closures, a hot button issue that has embroiled the Middletown community.

Mattison now brings this action on behalf of herself and those similarly situated to enjoin Aveta's First Amendment violations. Incidentally, Mattison also seeks damages for past violations of her constitutional rights.

## PARTIES

2. Plaintiff Mattison is a resident of Middletown Township and a member of certain advocacy and other social groups.

3. Defendant Aveta is currently the President of the Middletown Township Board of Education.

4. Aveta is being sued in his individual and official capacities.

5. Official capacity suits are construed as suits against the entity, *Kentucky v. Graham*, 473 U.S. 159, 166 (1985), and thus, MTPS is the real party in interest as to the official capacity claim.

6. MTPS is a public body organized under the laws of the State of New Jersey and operates and maintains public schools in Middletown, NJ.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over the parties because all parties reside in this State.

8. The Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the claims arise under the First Amendment of the United States Constitution and, thus, present a federal question.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because Aveta resides here and a substantial part of the events or omissions giving rise to the claim occurred in this district.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### A. As Board President, Aveta Is A Policymaker In Setting The Agenda And The Rules Governing Public Comment.

10. Under New Jersey law, board of education meetings "shall be public" and each board must "hold a meeting at least once every two months during the period in which the schools in the district are in session." N.J.S.A. § 18A:10-6.

11. Under the Open Public Meetings Act ("OPMA"), N.J.S.A. § 10:4-12, boards of education must "set aside a portion of every meeting . . . for public comment on any . . . school district issue that a member of the public feels may be of concern to the residents of the . . . school district."

12. Consistent with the OPMA, and its general powers under N.J.S.A. § 18A:11-1, MTPS has adopted certain rules and regulations governing the public's participation in its meetings.

13. MTPS Policy 9325 designates the board president as the presiding member "at all meetings of the board." A copy of Policy 9325 is attached as Exhibit A.

14. In addition, "[t]he superintendent and the board president . . . shall prepare the agenda for all meetings of the Middletown Township Board of Education." *See Policy 9323/9324*, attached as Exhibit B.

15. On January 6, 2026, Aveta began his three-year term as an MTPS board member.

16. On that date, and by a vote of 5-4 (he voted for himself), Aveta became MTPS's Board President.

17. Upon information and belief, since that reorganization meeting where he was elected President, Aveta has presided over all four MTPS meetings consistent with Policy 9325.

18. During those four meetings, MTPS has published an agenda that states the following as it pertains to speakers during public comment: "A participant must be recognized by the Board President or presiding officer and ***must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable***." *See Agenda of January 22, 2026*; *Agenda of February 19, 2026*; *February 26, 2026*; *March 24, 2026*, all of which are attached as Exhibits C, D, E, and F, respectively. (emphasis added).

19. Indeed, in the last few days, MTPS has published an agenda for its meeting on April 21, 2026, which includes this same requirement. *See Agenda of April 21, 2026*, attached as Exhibit G.

20. MTPS's meetings are publicly streamed on the World Wide Web through MTPS's YouTube Channel.

21. This means when a speaker discloses their name, municipal residence and group affiliation it becomes available to the entire world (or at least those who can access YouTube.com).

22. In addition, MTPS keeps copies of the videos—*i.e.*, the information—for years—indeed, its YouTube channel has videos from meetings that took place seven years ago.

23. MTPS has not, at least to Mattison's knowledge, articulated any basis for why it needs an individual's group affiliation.

24. Nor has MTPS ever explained what it does with the information it collects through its policy of compelled disclosure.

B. <u>MTPS's Decision To Close Schools.</u>

25. On February 26, 2026, Aveta—along with board members Sara Weinstein, Caterina Skalaski, Jacqueline Tobacco, and Frank Capone (collectively, the "Aveta Five")—voted to close certain schools in the district.

26. The vote was taken without MTPS conducting the required analysis under state law or its own policies.

27. Moreover, the plan to close schools—among other unlawful acts—exacerbates segregation in MTPS schools.

28. On March 24, 2026, Superintendent Dr. Jessica Alfone, Ed.D., denied that she recommended the closures, effectively pointing the finger at the Aveta Five.

29. The decision to close schools drew an administrative challenge from seven alarmed parents, *Rooney v. Middletown Township Bd. of Ed.*, Agency Dkt. No. 079-03-26 (filed on March 4, 2026).

30. The Petition of Appeal makes clear that Aveta and Weinstein ran campaigns that were heavily funded—either directly or indirectly through a political action committee—by firms who would benefit from renovating the properties on which the closed schools are situated.

31. The matter has been hotly debated at public meetings since it was first introduced on February 19, 2026, with meetings stretching for six to seven hours.

32. Moreover, Aveta has been overzealous in enforcing the rules governing public comment against speakers.

33. For example, in addition to requiring certain disclosures, the Aveta-sanctioned agendas also limit public comment to three minutes. *See Agenda of January 22, 2026*; *Agenda of February 19, 2026*; *February 26, 2026*; *March 24, 2026*; and *April 21, 2026*, Exhibits C, D, E, F, and G, respectively.

34. During the meeting on February 26, 2026, Aveta interrupted a speaker who opposed school closures for exceeding the three-minute time limit and then had him surrounded by two security officers, as well as an armed Middletown police officer.

35. The interaction is visible on video of the meeting between 3:33:26 and 3:34:52.[1]

36. The fact that young students, many in elementary and middle school, were present did not deter Aveta from flexing his authority over a speaker who failed to comply with the requirements he set forth in the agenda.

[1] The video of the February 26, 2026 meeting is available at: https://www.youtube.com/watch?v=y_xohA2ug8I&t=17552s (last accessed on April 18, 2026).

37. Similarly, other members of the Aveta Five have not hesitated to call for police involvement to deal with attendees who they (incorrectly) believe failed to adhere to Aveta's rules for how meetings should operate.

38. For example, during the meeting on March 24, 2026—and specifically during a discussion about school closures—Board Member Tobacco demanded that members of the audience be "escorted out" for jeering Tobacco's intemperate and condescending treatment of another Board Member.

39. This interaction is visible between 2:59:15 and 3:00:05 on the video of the public meeting.[2]

C. The Chilling Effect On Plaintiff.

40. Mattison seeks to participate in the public debate around school closures.

41. However, Mattison is a member of certain groups, including those that participate in advocacy on issues of public concern.

42. Conflict-averse to the core, Mattison wants to comply with Aveta's rules for public comment and has no desire to be escorted out or otherwise be surrounded by anyone resembling event security.

43. However, Mattison does not wish to disclose her membership or affiliation with any groups of which she is a member, which is what Aveta requires based on his published agendas.

44. As a result of this requirement that speakers disclose their group affiliation, Mattison has refrained from joining the debate on school closures at MTPS meetings.

45. Mattison's free speech rights have been chilled as a result.

---

[2] The video of the March 24, 2026 meeting is available at: https://www.youtube.com/watch?v=EZR0vV9Fkw0 (last accessed on April 18, 2026).

46. Mattison has therefore suffered a compensable injury.

D. Class Allegations.

47. Mattison seeks to represent the following class (the "Class") pursuant to Fed. R. Civ. P. 23(b)(2):

> All persons who have attended, or will in the future attend, Middletown Township Board of Education meetings and desire to speak during the public comment period without having to disclose any affiliation they may have with any groups or organizations.

48. Specifically excluded from the Class are Aveta and MTPS, including MTPS's board members, employees, officers, legal representatives, heirs, and successors; counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

49. All members of the Class have suffered a substantially similar injury: being subjected to an unconstitutional policy that compels them to disclose their affiliations with organizations if they wish to speak during public comment at MTPS meetings.

50. Subject to additional information obtained through further investigation and discovery, the definition of the Class may be revised as appropriate.

51. *Numerosity*. The members of the Class are so numerous that individual joinder is impracticable. Upon information and belief, Mattison reasonably estimates that there are at least 200 to 500 members in the Class—and likely many more given the hotly-contested topic of school closures.

52. *Commonality*. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

a. whether Aveta acts as a policymaker when he sets forth the rules for public comment in the published agenda;

b. whether the requirement that speakers disclose their "group affiliation" constitutes a compelled disclosure in violation of the First Amendment;

c. whether the requirement that speakers disclose their "group affiliation" unconstitutionally chills speech protected under the First Amendment;

d. whether Mattison and the Class are entitled to an injunction prohibiting future violations of their First Amendment rights, including an injunction enjoining Aveta from enforcing the disclosure requirement.

53. *Typicality*. Mattison's claims are typical of other members of the Class in that, among other things, all members of the Class were similarly situated and were comparably injured through Aveta's wrongful conduct. As explained above, each member of the Class suffered a substantially similar injury by having their First Amendment rights unconstitutionally infringed upon. Further, there are no defenses available to Aveta that are unique to Mattison with respect to the claim for injunctive relief, which is the predominant claim in this matter.

54. *Adequacy of Representation*. Mattison will fairly and adequately protect the interests of the Class. Mattison has retained counsel that is experienced in constitutional rights litigation involving school districts, *see*, *e.g.*, *Sanchez v. Elizabeth Bd. of Educ.*, 2025 WL 1121594 (3d Cir. Apr. 16, 2025); *Carmona v. New Jersey Dep't of Educ.*, 2023 WL 5814677 (3d Cir. Sept. 8, 2023); *Conroy v. Lacey Twp. Sch. Dist.*, 2020 WL 528896 (D.N.J. Jan. 31, 2020), as well as complex class action litigation, *see*, *e.g.*, *Boyer v. Breckenridge Pharmaceutical, Inc.*, Civil Action No. 24-6514 (JKS-JBC) (D.N.J. filed on May 29, 2024); *Butler v. Glenmark Pharmaceuticals, Inc.*, Civil Action No. 24-8907 (EP-JSA) (D.N.J. filed on Aug. 30, 2024); *Brewton v. Glenmark Pharmaceuticals, Inc.*, Civil Action No. 25-12055 (EP-JSA) (D.N.J. filed on June 23, 2025). In *Boyer*, the court found

Shah Law Group adequately represented the class and approved class certification and settlement. *Boyer*, Civil Action No. 24-6514, ECF No. 40. Mattison intends to vigorously prosecute this action on behalf of the Class. Furthermore, Mattison has no interests that are antagonistic to those of the Class.

55. *Superiority*. Class treatment is a superior method for the fair and efficient adjudication of the controversy because, among other things, class treatment will permit a large number of similarly situated persons to prosecute their common claims in the same forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons and entities with a means of obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

56. Class treatment is manageable, and Mattison knows of no management difficulties that would preclude class certification in this case.

**Count I: Violation Of The First Amendment Under 42 U.S.C. § 1983**
**(Mattison, Individually And On Behalf Of Those Similarly-Situated vs.**
**Aveta, Both In His Individual And Official Capacity)**

57. Mattison hereby repeats and re-alleges each of the foregoing allegations as if they were fully set forth herein.

58. Aveta has indisputably, and without exception since he joined the Board, caused agendas to be published requiring speakers at public meetings to preface their comments by disclosing, among other things, their group affiliation. *See Agenda of January 22, 2026*; *Agenda of February 19, 2026*; *February 26, 2026*; *March 24, 2026*, *April 21, 2026*, Exhibits C, D, E, F, and G, respectively.

59. Aveta is a policymaker for purposes of setting the public meeting agenda, including the rules governing public comment.

60. Thus, the agendas—including their unconstitutional requirement that speakers disclose their group affiliation—constitute the official policy and/or custom of MTPS.

61. Aveta was on notice of the First Amendment issues concerning his prescribed rules for public comment because it was explicitly raised in the Petition of Appeal in the *Rooney* matter. *See Petition of Appeal* (without exhibits), ¶¶ 185-86, attached as Exhibit H.

62. That Petition was filed and served on MTPS on March 6, 2026.

63. Despite that explicit notice, Aveta caused to be published a public meeting agenda on March 24, 2026, which again required speakers to disclose their group affiliation prior to speaking.

64. Aveta and other members of the Aveta Five have not hesitated to involve police and security officers in their efforts to strictly maintain control over public meetings, especially as it pertains to the subject of school closures.

65. As noted above, at the meeting on February 24, 2026, a speaker who exceeded the agenda's allotted three-minute time period was quickly surrounded by two security guards and an armed police officer.

66. In addition, Tobacco—an Aveta ally—has called for the forced removal of audience members who do not observe what she deems proper decorum under MTPS's Policy 1112.6, which vaguely "authorizes school officials to have expelled from any district event by the law enforcement officers on duty, any spectator who willfully violates the

rules and regulations of the district or whose behavior jeopardizes the safe conduct of the event."

67. The compelled disclosures have a chilling effect on public speakers, such as Mattison and the Class, who do not wish to broadcast their group affiliations to the MTPS Board, audience members, or those viewing the meeting on the internet.

68. This is especially true where, as here, certain MTPS board members have openly expressed hostility towards those in groups they dislike or disagree with.

69. For example, during the meeting on March 24, 2026, during a colloquy with a fellow board member, Tobacco openly mocked and expressed disdain for members of the New Jersey Education Association, the statewide teachers' union. *See MTPS Meeting on March 24, 2026*, Tr. 2:59:34-3:01:42[3].

70. Aveta failed to address Tobacco's intemperate conduct or its impact on potential speakers who are required to disclose their group affiliation under his prescribed rules for public comment.

71. In addition, requiring speakers, such as Mattison and the Class, to disclose their group affiliation creates the unnecessary risk that the Aveta Five and/or their allies would contact or harass those groups, thereby leading to conflict between the speakers and the disclosed groups' leaders and members.

72. As a result of MTPS's formal policy and/or custom compelling public speakers to disclose their group affiliation prior to speaking, Mattison and the Class have been reluctant to speak at public meetings.

[3] The video of the meeting is available at the following link: https://www.youtube.com/watch?v=EZR0vV9Fkw0

73. Mattison and the Class have been wrongfully subjected to an unconstitutional requirement that they disclose certain private information about themselves in a public forum as a condition of participating in the public comment period.

74. That requirement has forced Mattison and the Class to refrain from speaking and participating in the public debate concerning school closures.

75. Aveta has not articulated—nor can he—any sufficiently important governmental interest that would warrant requiring individuals to disclose their group affiliation prior to speaking at a public meeting.

76. Mattison has suffered damages, including but not limited to emotional distress, as a result of Aveta's unconstitutional and illegal conduct.

77. Mattison and the Class will continue to suffer harm absent injunctive relief that prohibits Aveta from enforcing his policy of compelled disclosure.

**WHEREFORE**, Mattison hereby prays for judgment in her favor on this Count, including:

a) an award of compensatory damages available under 42 U.S.C. § 1983 to Mattison, including both pre-judgment and post-judgment interest;

b) a declaratory judgment in favor of Mattison and the Class, pursuant to 22 U.S.C. § 2201, declaring that Aveta's requirement that speakers disclose their "group affiliation" prior to speaking at a meeting violates the First Amendment;

c) an injunction in favor of Mattison and the Class enjoining Aveta from publishing any agendas or other policies that require individuals to identify their "group affiliation" prior to speaking during public comment;

d) an injunction in favor of Mattison and the Class enjoining Aveta from demanding that individuals disclose their group affiliation prior to speaking during public comment;

e) an award of reasonable attorney fees and costs under 42 U.S.C. § 1988;

f) all other relief that the Court may deem just and equitable.

**Count II: Punitive Damages For Violation Of The First Amendment**
**(Mattison, Individually vs. Aveta, In His Individual Capacity Only)**

78. Mattison hereby repeats and re-alleges each of the foregoing allegations as if they were fully set forth herein.

79. As a public official who had served on boards of education in the past, including for both MTPS and the Carteret Public Schools, Aveta knew or should have known that requiring individuals to disclose their group affiliation as a condition of participating in public comment infringed upon the First Amendment.

80. Indeed, at the absolute latest, Aveta knew from the Petition of Appeal in *Rooney* that such a requirement violated the First Amendment.

81. Nonetheless, Aveta continued to publish agendas which included the unconstitutional disclosure requirement.

82. Aveta caused this requirement to be included despite knowledge that the MTPS community sought to eagerly and robustly debate the topic of school closures.

83. At an absolute minimum, Aveta callously and recklessly disregarded the consequences his actions would have on the First Amendment rights of individuals, like Mattison, who wished to speak on the topic of school closures without disclosing her group affiliation.

84. Mattison has been injured as a result.

**WHEREFORE**, Mattison hereby prays for judgment in her favor on this Count, including an award of punitive damages, reasonable attorney fees and costs, pre-judgment and post-judgment interest, and all other relief the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Mattison hereby demands a jury trial as to all issues so triable.

Respectfully submitted,

**SHAH LAW GROUP, LLC**
*Attorneys for Plaintiff Tara Mattison, Individually And On Behalf Of Those Similarly-Situated*

Dated: April 21, 2026

By: */s/Roshan D. Shah*
ROSHAN D. SHAH, ESQ.

## VERIFICATION UNDER L. CIV. R. 11.2

I hereby certify that the matter in controversy is not the subject of any other action pending in any court, arbitration or administrative proceeding.

Dated: April 21, 2026

*/s/Roshan D. Shah*
ROSHAN D. SHAH, ESQ.

**VERIFICATION UNDER OATH**

Tara Mattison of full age, being duly sworn upon her oath according to law deposes and says:

1. I am the plaintiff in this matter.

2. I have read the Verified Complaint and aver that the facts contained therein are true to the best of my knowledge except as to those matters stated on information and belief, which I believe to be true.

Tara Mattison

______________________________

Tara Mattison

Dated:

# EXHIBIT A

EXHIBIT
A

| | |
|---|---|
| Book | Middletown Township Policies |
| Section | Series 9000 - Bylaws of the Board |
| Title | Conduct of Meetings |
| Code | 9325 |
| Status | Active |
| Adopted | March 21, 2006 |

**FILE CODE: 9325**

**MIDDLETOWN TOWNSHIP BOARD OF EDUCATION**
**Leonardo, New Jersey**

**Bylaw**

| | |
|---|---|
| | Monitored |
| | Mandated |
| | Other Reasons |

CONDUCT OF MEETINGS

Parliamentary Authority

Robert's Rules of Order, Newly Revised, shall govern the Middletown Township Board of Education in its deliberations and acts in all cases in which it is not inconsistent with statutes of the State of New Jersey, rules of the State Board of Education, or these bylaws.

Presiding Officer

The president shall preside at all meetings of the board. In the absence, disability, or disqualification of the president, the vice president shall act in his or her place; if neither person is present, any member shall be designated by a plurality of those present to preside. The act of any person so designated shall be legal and binding.

Announcement of Adequate Notice

The person presiding shall commence each meeting with an announcement of the notice given for the meeting or a statement regarding the lack of adequate notice, in accordance with law.

Quorum

A quorum of a nine member board shall consist of five (5) board members. Three (3) board members may serve on a board committee.

No official business shall be conducted in the absence of a quorum. In the event a quorum is not present at the hour of convening, the meeting may be recessed to a time not later than 9 o'clock p.m. of the same day. If a quorum is not then present, the board member(s) present may recess the meeting to a time not later than 9:00 p.m. of the same day and, if a quorum be not present at that time, the member or members present may adjourn the meeting to commence not later than 8:00 p.m. of another day, but not more than seven days following the date for which the original meeting was called, but no further recess or adjournment of the meeting shall be made.

In the rare event that the number of board members who have a conflict of interest make a quorum impossible, the Doctrine of Necessity may be invoked. The Doctrine of Necessity may be invoked under the following circumstances:

A. The board must be unable to act without the members in conflict taking part; and

B. There must be a pressing need for action, i.e. the matter cannot be laid aside until another date; and

C. There can be no alternative forum that can grant the same relief (Allen v. Toms River Regional Board of Education, 233 N.J. Super 651 (Law Division 1989).

Doctrine of Necessity must be announced, and the announcement shall include the reason the board must invoke the Doctrine of Necessity including stating the nature of each board member’s conflict. The announcement shall be documented in writing and recorded in the minutes.

Order of Business

In general, the order of business shall be as follows for executive session or regular session:

1. Mission Statement
2. District Goals
3. Code of Ethics
4. Call to Order
5. Sunshine Notice
6. Roll Call
7. Hearing of Public on Agenda items only (time limit to be further discussed)
8. Approval of Minutes
9. President’s Report
10. Business Administrator/Secretary’s Report
11. Superintendent’s Report
12. Report of Committees
13. Old Business
14. New Business
15. Hearing of the Public
16. Adjournment

Doctrine of Necessity

When a quorum of the board has conflicted interests (see also board policies 4112.8 Nepotism and 9270 Conflict of Interest), the doctrine of necessity may be invoked in order to allow conflicted board members to participate in the negotiation process and vote. The doctrine of necessity may be invoked for the negotiation team or superintendent search committee only when the board of education has fewer non-conflicted board members than are required, pursuant to statute, to take action. The board shall only invoke the doctrine of necessity after consultation with the board attorney. When invoking the doctrine of necessity the board shall state publicly that it is invoking the doctrine of necessity with the reasons for doing so and the specific nature of the conflicts of interest. The board shall read the resolution invoking the doctrine of necessity at a regularly scheduled public meeting, post the notice of the resolution for 30 days and provide the School Ethics Commission with a copy of the resolution.

| | |
|---|---|
| Adopted: | March 21, 2006 |
| Revised: | August 2009, August 23, 2022 |
| NJSBA Review/Update: | April 2024 |
| Readopted: | |

Key Words

Parliamentary Authority, Presiding Officer, Agenda, Quorum

**Possible**
**Cross References:**

| | |
|---|---|
| *1220 | Ad hoc advisory committees, |
| *9121 | Election and duties of president |
| 9325.4 | Voting Method |
| 9326 | Minutes |

# EXHIBIT B

EXHIBIT
B

| | |
|---|---|
| Book | Middletown Township Policies |
| Section | Series 9000 - Bylaws of the Board |
| Title | Agenda Preparation/Advance Delivery of Meeting Material |
| Code | 9323/9324 |
| Status | Active |
| Legal | N.J.S.A. 18A 11-1: General mandatory powers and duties<br>N.J.S.A. 18A 54-20: Powers of board<br>Crifasi v. GoverningBody of the Borough of Oakland, 156 N.J. Super.182 (App. Div. 1978) |

**FILE CODE: 9323/9324**

**MIDDLETOWN TOWNSHIP BOARD OF EDUCATION**
**Leonardo, New Jersey**

**Bylaw**

| | |
|---|---|
| | Monitored |
| | Mandated |
| X | Other Reasons |

AGENDA PREPARATION/ADVANCE DELIVERY OF MEETING MATERIAL

The Middletown Township Board of Education recognizes that it has a duty to the public for the efficient operation of the school district and, as part of that duty, it must carefully deliberate any proposed actions to be taken by it. Hence, it is the board's intent to carefully consider all matters before it well in advance of any formal board action.

The superintendent and the board president, or vice president as necessary, shall prepare the agenda for all meetings of the Middletown Township Board of Education. In doing so, they shall consult the board secretary.

Items of business suggested by any board member, staff member, or citizen of the district may be included at the discretion of the superintendent and board president. Where appropriate on the agenda, it shall allow time for the remarks of citizens, staff members, or students who wish to speak briefly before the board.

The agenda shall be published pursuant to the provisions of the Open Public Meetings Act. The board shall follow the order of business set up by the agenda unless the order is altered by a majority vote of the members present and voting. At a regularly scheduled meeting for which an advance agenda has been provided to the public, items of business not anticipated at the time the agenda was prepared may be discussed and acted upon if a majority of the board present and voting agrees to consider them. However, existing board policies and bylaws may not be revised, or new ones adopted, unless the proposals are on the written agenda.

The agenda, together with supporting materials, shall be distributed to board members not less than 48 hours prior to a regular meeting and posted on the website. The agenda shall also be made available to the press, representatives of community and staff groups, and others, upon request.

NJSBA Review/Update: April 2024
Adopted:

Key Words

Board Meeting Agenda, Delivery of Meeting Materials, Board Meeting Materials, Agenda

**Legal References:** N.J.S.A. 18A:11-1 General mandatory powers and duties
N.J.S.A. 18A:54-20 Powers of board (county vocational schools)

Crifasi v. Governing Body of the Borough of Oakland, 156 N.J. Super. 182 (App. Div. 1978)

**Possible Cross References:**
*1120 Board of education meetings
*9311 Formulation, adoption, amendment of policies
*9312 Formulation, adoption, amendment of bylaws

*Indicates policy is included in the Critical Policy Reference Manual.

# EXHIBIT C

EXHIBIT
C
ALL-STATE LEGAL®

Thursday, January 22, 2026
Board of Education Workshop Meeting
Middletown Township Public Schools Board of Education Meeting
This meeting will be held in the High School North Library, 63 Tindall Road, Middletown NJ 07748
The meeting will begin at 7:00 PM to allow the Board to meet in Executive Session, which is not open to the public.
The public portion of the meeting will begin at approximately 7:30 PM

# 1. Meeting Opening / Call to Order

| | |
|---|---|
| Subject : | A. Reading of the Sunshine Announcement |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

*"Adequate notice of this meeting was provided by sending such notice to the Asbury Park Press, The Middletown Patch, and the Middletown Township Public Schools District Website and the posting of such notice at the August T. Miner Administrative Offices and each elementary, middle, and secondary school in the district.*

| | |
|---|---|
| Subject : | B. Roll call |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |
| Subject : | C. Pledge of Allegiance and Moment of Silence |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

Sadly, the district has learned of the passing of threeformer teachers,Anne Campbell, Jacqueline Pfennig and Judith Hencoski.

Anne taught at High School South for 25 years before retiring in 2003.
Jackie taught in the district for over 41 years before retiring from Thorne Middle School in 2010.
Judy taught at Nut Swamp Elementary School for 27 years before retiring in 2014.
We extend our heartfelt condolences to the Campbell, Pfenning and Hencoski families.

# 2. Executive Session

| | |
|---|---|
| Subject : | A. Resolution for Executive Session |

| | |
|---|---|
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 2. Executive Session |
| Type : | Action |
| Recommended Action : | Enter into Executive Session |

# Public Content

**NOW, THEREFORE, BE IT RESOLVED by the Middletown Township Board of Education that the Board enters into Executive Session to discuss the following items:**

**__x__ a. Confidential Matters per Statute or Court Order**

**_____ b. Matters Impairing Rights to Receive Federal Funds**

**_____ c. Matters Constituting Unwarranted Invasion of Individual Privacy**

**__x__ d. Collective Bargaining Matters**

**_____ e. Acquisition of Real Property or Investment of Funds**

**_____ f. Matters Pertaining to Public Safety Procedures**

**_____ g. Litigation, Contract Negotiations, or Matters of Attorney-Client Privilege**

**__x__ h. Personnel Matters**

**_____ i. Matters Resulting in the Imposition of Penalties upon an Individual**

**BE IT FURTHER RESOLVED, that items discussed in Executive Session may result in Board action when the Board reconvenes to Public Session.**

# 3. Presentation

| | |
|---|---|
| Subject : | A. Presentation of the June 30, 2025 Annual Comprehensive Financial Report - Brian J. Waldron, CPA, PSA of Holman, Frenia, Allison, P.C. |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 3. Presentation |
| Type : | Information, Reports |

# 4. Committee Reports

| | |
|---|---|
| Subject : | A. Co-Curricular (Mark Soporowski) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

| | |
|---|---|
| Subject : | B. Curriculum (Deborah Wright) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | C. Facilities (Joan Minnuies) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | D. Finance (Chris Aveta) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

## File Attachments

2025-2026 Budget Review and 2026-2027 Budget Preview (revised).pdf (92 KB)

| | |
|---|---|
| Subject : | E. Legislative (Jacqueline Tobacco) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | F. Negotiations (Deborah Wright) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | G. Personnel (Frank Capone) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | H. Policy (Jacqueline Tobacco) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | I. Student Services (Erin Torres) |

| | |
|---|---|
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | J. Technology (Sara Weinstein) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | K. Shared Services (Chris Aveta) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

# 5. Review Draft Voting Agenda

| | |
|---|---|
| Subject : | A. Review DRAFT January 27, 2026 Voting Meeting Agenda |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Review Draft Voting Agenda |
| Type : | Discussion, Information |

# 6. Old Business

| | |
|---|---|
| Subject : | A. Old Business |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 6. Old Business |
| Type : | Discussion, Information |

# 7. New Business

| | |
|---|---|
| Subject : | A. New Business |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 7. New Business |
| Type : | Discussion, Information |

# 8. Public Comment

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 8. Public Comment |

| | |
|---|---|
| Type : | Procedural |

# Public Content

**<u>For the purpose of commenting on any topic.</u>**

<u>Guidelines for Public Comment:</u>

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;
2. Each statement made by a participant shall be limited to THREE minutes duration;
3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;
4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and
5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

# 9. Meeting Closing

| | |
|---|---|
| Subject : | A. Adjourn |
| Meeting : | Jan 22, 2026 - Board of Education Workshop Meeting |
| Category : | 9. Meeting Closing |
| Type : | Action |
| Recommended Action : | Adjourn the Meeting |

# EXHIBIT D

EXHIBIT
D
ALL-STATE LEGAL

Thursday, February 19, 2026
Board of Education Workshop Meeting

Middletown Township Public Schools Board of Education Meeting
This meeting will be held in the High School North Library, 63 Tindall Road, Middletown NJ 07748
The meeting will begin at 7:00 PM to allow the Board to meet in Executive Session, which is not open to the public.
The public portion of the meeting will begin at approximately 7:30 PM

# 1. Meeting Opening / Call to Order

| | |
|---|---|
| Subject : | A. Reading of the Sunshine Announcement |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

*"Adequate notice of this meeting was provided by sending such notice to the Asbury Park Press, The Middletown Patch, and the Middletown Township Public Schools District Website and the posting of such notice at the August T. Miner Administrative Offices and each elementary, middle, and secondary school in the district.*

| | |
|---|---|
| Subject : | B. Roll call |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# 2. Executive Session

| | |
|---|---|
| Subject : | A. Resolution for Executive Session |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 2. Executive Session |
| Type : | Action |
| Recommended Action : | Enter into Executive Session |

# Public Content

**NOW, THEREFORE, BE IT RESOLVED by the Middletown Township Board of Education that the Board enters into Executive Session to discuss the following items:**

**__x__ a. Confidential Matters per Statute or Court Order**

**_____ b. Matters Impairing Rights to Receive Federal Funds**

**_____ c. Matters Constituting Unwarranted Invasion of Individual Privacy**

**__x__ d. Collective Bargaining Matters**

**_____ e. Acquisition of Real Property or Investment of Funds**

**_____ f. Matters Pertaining to Public Safety Procedures**

**_____ g. Litigation, Contract Negotiations, or Matters of Attorney-Client Privilege**

**__x__ h. Personnel Matters**

**_____ i. Matters Resulting in the Imposition of Penalties upon an Individual**

**BE IT FURTHER RESOLVED, that items discussed in Executive Session may result in Board action when the Board reconvenes to Public Session.**

## 3. Reconvene to Public Session

| | |
|---|---|
| Subject : | A. Call To Order - Reconvene to Public Session |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |
| Subject : | B. Pledge of Allegiance and Moment of Silence |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |

# Public Content

Sadly, the district has learned of the passing of three former employees; Leslie (Shannon) Hoadley, Ann Wasserman and Jean Simes.

Shannon worked as a security guard before he left the district in 2016.

Ann taught in the district for 16 years before retiring in 1981.

Jean taught in the district for over 30 years before retiring in 2000.

Our sincerecondolences are extendedto the Hoadley, Wasserman and Simes families.

## 4. Presentation

| | |
|---|---|
| Subject : | A. Presentation by Ross Haber and Associates, LLC |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Presentation |

Type :

## 5. Committee Reports

| | |
|---|---|
| Subject : | A. Co-Curricular (Mark Soporowski) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | B. Curriculum (Deborah Wright) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | C. Facilities (Joan Minnuies) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | D. Finance (Chris Aveta) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | E. Negotiations (Deborah Wright) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | F. Personnel (Frank Capone) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | G. Student Services (Erin Torres) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | H. Technology (Sara Weinstein) |

| | |
|---|---|
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | I. Food Service Committee |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |
| Subject : | J. Calendar Committee |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Committee Reports |
| Type : | Information, Reports |

# 6. Review Draft Voting Agenda

| | |
|---|---|
| Subject : | A. Review DRAFT February 24, 2026 Voting Meeting Agenda |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 6. Review Draft Voting Agenda |
| Type : | Discussion, Information |

# 7. Old Business

| | |
|---|---|
| Subject : | A. Old Business |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 7. Old Business |
| Type : | Discussion, Information |

# 8. New Business

| | |
|---|---|
| Subject : | A. New Business |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 8. New Business |
| Type : | Discussion, Information |

# 9. Public Comment

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 9. Public Comment |

| | |
|---|---|
| Type : | Procedural |

# Public Content

**<u>For the purpose of commenting on any topic.</u>**

<u>Guidelines for Public Comment:</u>

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;

2. Each statement made by a participant shall be limited to THREE minutes duration;

3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;

4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and

5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

# 10. Meeting Closing

| | |
|---|---|
| Subject : | A. Adjourn |
| Meeting : | Feb 19, 2026 - Board of Education Workshop Meeting |
| Category : | 10. Meeting Closing |
| Type : | Action |
| Recommended Action : | Adjourn the Meeting |

# EXHIBIT E

EXHIBIT
ALL-STATE LEGAL®
E

Thursday, February 26, 2026
Board of Education Voting Meeting
Middletown Township Public Schools Board of Education Meeting
This meeting will be held in the Auditorium at High School North, 63 Tindall Road, Middletown NJ 07748
The meeting will begin at 7:00 PM to allow the Board to meet in Executive Session, which is not open to the public.
The public portion of the meeting will begin at approximately 7:30 PM

# 1. Meeting Opening / Call to Order

| | |
|---|---|
| Subject : | A. Reading of the Sunshine Announcement |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

*"Adequate notice of this meeting was provided by sending such notice to the Asbury Park Press, The Middletown Patch, and the Middletown Township Public Schools District Website and the posting of such notice at the August T. Miner Administrative Offices and each elementary, middle, and secondary school in the district.*

| | |
|---|---|
| Subject : | B. Roll call |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# 2. Executive Session

| | |
|---|---|
| Subject : | A. Resolution for Executive Session |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 2. Executive Session |
| Type : | Action |
| Recommended Action : | Enter into Executive Session |

# Public Content

**NOW, THEREFORE, BE IT RESOLVED by the Middletown Township Board of Education that the Board enters into Executive Session to discuss the following items:**

**__x__ a. Confidential Matters per Statute or Court Order**

**_____ b. Matters Impairing Rights to Receive Federal Funds**

**_____ c. Matters Constituting Unwarranted Invasion of Individual Privacy**

**__x__ d. Collective Bargaining Matters**

**_____ e. Acquisition of Real Property or Investment of Funds**

**_____ f. Matters Pertaining to Public Safety Procedures**

**_____ g. Litigation, Contract Negotiations, or Matters of Attorney-Client Privilege**

**__x__ h. Personnel Matters**

**_____ i. Matters Resulting in the Imposition of Penalties upon an Individual**

**BE IT FURTHER RESOLVED, that items discussed in Executive Session may result in Board action when the Board reconvenes to Public Session.**

# 3. Reconvene to Public Session

| | |
|---|---|
| Subject : | A. Call To Order - Reconvene to Public Session |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |
| Subject : | B. Pledge of Allegiance |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |

# 4. Student Speakers

| | |
|---|---|
| Subject : | A. High School North - Jason Woods |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 4. Student Speakers |
| Type : | Information, Reports |
| Subject : | B. High School South - Jessica Cirillo |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 4. Student Speakers |
| Type : | Information, Reports |

# 5. Public Comment on Agenda Action Items Only

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |

| | |
|---|---|
| Category : | 5. Public Comment on Agenda Action Items Only |
| Type : | Procedural |

# Public Content

**For the purpose of commenting on agenda items that the Board will be taking action on this evening.**

Guidelines for Public Comment:

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;
2. Each statement made by a participant shall be limited to THREE minutes duration;
3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;
4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and
5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

## 6. Proclamation

| | |
|---|---|
| Subject : | A. Read Across America Day |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 6. Proclamation |
| Type : | Information, Procedural |

# Public Content

WHEREAS, Read Across America, is a national celebration of reading, sponsored by the National Education Association that promotes reading and adult involvement in the education of our communitys students; Now, therefore, be it

RESOLVED That the Middletown Township Board of Education does hereby recognize March 2, 2026 as Read Across America Day; and be it further

RESOLVED That the Middletown Township Board of Educationcalls on the citizens of Middletown to celebrate reading by engaging in programs and activities that allow the children of Middletown to be the strongest readers they can be.

# 7. Reports

| | |
|---|---|
| Subject : | A. Board President's Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 7. Reports |
| Type : | Information, Reports |
| Subject : | B. Superintendent's Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 7. Reports |
| Type : | Information, Reports |

# 8. Approval of Meeting Minutes

| | |
|---|---|
| Subject : | A. Executive Session Meeting Minutes January 22, 2026 |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Executive Session Meeting Minutes of January 22, 2026. |
| Subject : | B. Workshop Meeting Minutes January 22, 2026 |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Regular Voting Meeting Minutes of January 22, 2026. |
| Subject : | C. Executive Session Meeting Minutes January 27, 2026 |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Executive Session Meeting Minutes of January 27, 2026. |
| Subject : | D. Regular Voting Meeting Minutes January 27, 2026 |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |

| | |
|---|---|
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Regular Voting Meeting Minutes of January 27, 2026. |

# 9. Board of Education

| | |
|---|---|
| Subject : | A. Policy Second Reading - Adoption |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 9. Board of Education |
| Type : | Action |
| Recommended Action : | Second Reading and Adoption of the Following Policies:<br>4111 (mandated): Recruitment, Selection and Hiring<br>5127 (mandated): Commencement Activities<br>6163.1: Media Center, Library |
| Subject : | B. Acceptance of Donation |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 9. Board of Education |
| Type : | Action |
| Recommended Action : | Acceptance with gratitude of the donation by Ms. Anna Choromanska in the amount of $10,000. This donation is to be dedicated to enhancing special education/autism programs at New Monmouth Elementary School. |

# 10. Business Office - Consent Agenda

| | |
|---|---|
| Subject : | A. Board Secretary's Monthly Certification |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Accept the certification Pursuant to N.J.A.C. 6A:23A-16.10(c) 3, the School Business Administrator / Board Secretary certifies that as of January 31, 2026 no line item account has encumbrances and expenditures, which in total exceed the line appropriation in violation of N.J.A.C. 6A:23-2.11(a). |
| Subject : | B. Board Secretary's Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Report of the Secretary for the month of |

January, as per Attachment BA-1.

## File Attachments

BA-1 Board Secretary Report 2.24.26.pdf (136 KB)

| | |
|---|---|
| Subject : | C. Transfer of Funds |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Fund Transfers for January, as per Attachment BA-2. |

## File Attachments

BA-2 Transfers 2.24.26.pdf (66 KB)

| | |
|---|---|
| Subject : | D. Bills List |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Bill List for the period of January 27, 2026 through February 24, 2026, as per Attachment BA-3. |

## File Attachments

BA-3 Bills List 2.24.26.pdf (274 KB)

| | |
|---|---|
| Subject : | E. Extension of Bid Award 2024-2025-2, Landscape Maintenance Services |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Extension of contract with Diamond Property Maintenance, Inc. under award for bid 2024-2025-2, Landscape Maintenance Services, for a total cost of $86,000 for the period of March 1, 2026 through February 28, 2027. |

| | |
|---|---|
| Subject : | F. Purchase of Custodial Equipment |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approval of purchase of four Chariot scrubbers from Scoles Systems for a total cost of $52,759.72 (Ed Data contract #12286). |

| | |
|---|---|
| Subject : | G. Award of Transportation Bid |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 10. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Award 2025-2026 Athletic Transportation Contracts from Bid 2025-2026-7T, as per Attachment Finance-1. |

### File Attachments

Finance-1Transportation 2.24.26.pdf (60 KB)

# 11. Recommendations of the Superintendent of Schools - Consent Agenda

| | |
|---|---|
| Subject : | A. Harassment, Intimidation and Bullying - HIB Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Report on Harassment, Intimidation and Bullying (HIB), as per Attachment Superintendent-1. |

### File Attachments

Superintendent-1 HIB Table 2.24.26.pdf (37 KB)

| | |
|---|---|
| Subject : | B. Student Safety Data System Summary Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the SSDS Summary Report on Incidents of Violence, Vandalism, Weapons and Substance Offense for the month of January. |

# Public Content

**SSDS Summary Report:**

| | **2025** | | | | **2026** | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **District Tally** | **Sept.** | **Oct.** | **Nov.** | **Dec.** | **Jan.** | **Feb.** | **March** | **April** | **May** | **June** |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Violence** | 3 | 5 | 2 | 4 | 2 | 0 | 0 | 0 | 0 | 0 |
| **Vandalism** | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| **Weapons** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Substance Abuse** | 3 | 6 | 3 | 2 | 6 | 0 | 0 | 0 | 0 | 0 |

| | |
|---|---|
| Subject : | C. 2026-2027 School Calendar |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Adopt the 2026-2027 School Calendar, as per Attachment Superintendent-2. |

## File Attachments

Superintendent-2 2026-2027 School Calendar 2.24.26.pdf (871 KB)

| | |
|---|---|
| Subject : | D. Suspension Report |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Suspension Report, as per Attachment Student Activities-1. |
| Subject : | E. Summer Credit Recovery Program |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Program Dates for Summer Credit Recovery:<br>July 13, 2026 through July 16, 2025 - 8:30 am - 12:30 pm<br>July 20, 2026 through July 23, 2026 - 8:30 am - 12:30 pm |
| Subject : | F. Home Instruction |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |

Category : 11. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Home Instruction Students.

# Public Content

| Student ID | Start Date | End Date |
|---|---|---|
| 28022 | 2/9/26 | 4/10/26 |
| 26109 | 2/17/26 | 3/17/26 |
| 11724 | 1/15/26 | 3/23/26 |
| 26029 | 12/17/25 | 3/21/26 |
| 20019 | 1/23/26 | 1/27/26 |
| 27229 | 1/26/26 | 3/25/26 |
| 24646 | 1/30/26 | 3/30/26 |
| 26869 | 1/15/26 | 3/15/26 |
| 22203 | 2/4/26 | 3/4/26 |
| 17571 | 2/3/26 | 4/3/26 |
| 19395 | 1/24/26 | 2/24/26 |
| 18171 | 2/2/26 | 4/2/26 |
| 28959 | 1/8/26 | 4/1/26 |
| 25538 | 2/12/26 | 4/12/26 |
| 15954 | 2/2/26 | 3/2/26 |
| 29399 | 1/28/26 | 3/27/26 |
| 19381 | 2/4/26 | 2/9/26 |
| 15988 | 1/27/26 | 1/28/26 |
| 23770 | 1/14/26 | 3/14/26 |
| 24976 | 2/17/26 | 4/17/26 |
| 17473 | 1/5/26 | 3/5/26 |
| 29319 | 1/26/26 | 1/30/26 |
| 12601 | 1/5/26 | 3/5/26 |
| 19632 | 2/5/26 | 4/10/26 |
| 14952 | 2/2/26 | 4/2/26 |
| 16151 | 1/14/26 | 3/14/26 |
| 17343 | 2/19/26 | 3/19/26 |
| 22653 | 2/2/26 | 3/7/26 |
| 10617 | 2/4/26 | 4/3/26 |
| 19141 | 1/12/26 | 2/12/26 |
| 28084 | 2/9/26 | 4/9/26 |
| 21465 | 2/10/26 | 2/14/26 |
| 28323 | 2/6/26 | 3/3/26 |
| 15249 | 2/9/26 | 3/11/26 |

Subject : G. Special Education Out of District Placements

Meeting : Feb 26, 2026 - Board of Education Voting Meeting

Category : 11. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Out of District Placements.

# Public Content

| Student ID | Placement | Start Date | End Date | Cost |
|---|---|---|---|---|
| 29319 | CPC High Point School | 1/16/26 | 6/22/26 | $580.86 per day |
| 19889 | Collier School | 2/2/26 | 6/18/26 | $383.00 per day |
| 11724 | Educational Services Commission of NJ / Pathways to Adult Learning | 1/5/26 | 6/23/26 | $286.00 per day |
| 29276 | Harbor School | 3/2/26 | 6/18/26 | $646.70 per day |
| 29057 | The Education Academy | 2/19/26 | 6/12/26 | $292.64 per day |
| 28323 | The Rugby School | 3/4/26 | 6/25/26 | $425.20 per day |

Subject : H. Special Education Contracted Service Providers

Meeting : Feb 26, 2026 - Board of Education Voting Meeting

Category : 11. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Contracted Service Providers for Special Education Services.

# Public Content

| Provider | Services | Rates |
|---|---|---|
| TechAbilities | Augmentative & Alternative Communication Evaluation<br>Assistive Technology Evaluation<br>Assistive Technology or AAC Consultation | $1000 each<br>$900 each<br>$150 /hour |

| | | |
|---|---|---|
| Consulting, LLC | Assistive Technology/AAC Training for Student, Staff & Family (min 2 hours)<br><br>Half Day on site Professional Development for Staff<br><br>Full Day on site Professional Development for Staff | $175 /hour<br><br>$750 each<br><br>$1300 each |
| AAC & Me,LLC | AAC or Assistive Tech Evaluation<br><br>AAC Consultation Individual or Classroom Based<br><br>Half Day Professional Development for Staff<br><br>Full Day Professional Development for Staff | $1200 each<br><br>$150 / hour<br><br>$800 each<br><br>$1500 each |

Subject : I. Special Education Tuition In Students

Meeting : Feb 26, 2026 - Board of Education Voting Meeting

Category : 11. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Tuition In Contract Agreements.

# Public Content

| Student | Sending District | Tuition |
|---|---|---|
| GP | Union Beach School District | $30,679.84 |

Subject : J. Professional Development of Staff

Meeting : Feb 26, 2026 - Board of Education Voting Meeting

Category : 11. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Staff Attendance of Conferences, Workshops, In-Service and Seminars, as per Attachment Curriculum-1.

### File Attachments

Curriculum-1 Professional Development 2.24.26.pdf (53 KB)

Subject : K. Field Trips

Meeting : Feb 26, 2026 - Board of Education Voting Meeting

| | |
|---|---|
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Field Trips, as per attachment Curriculum-2. |

### File Attachments

Curriculum-2 Field Trip Destinations 2.24.26.pdf (66 KB)

| | |
|---|---|
| Subject : | L. Personnel |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 11. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Personnel Report and HR Attachments. |

### File Attachments

Personnel Committee Report 2.24.26.pdf (604 KB)
HR 1 Student Teaching 2.24.26.pdf (124 KB)
HR 2 Curriculum Committees 2.24.26.pdf (100 KB)
HR 3 Special Contracts - Coaches 2.24.26.pdf (143 KB)
HR 4 Special Contracts 2.24.26.pdf (131 KB)
HR 5 Paraprofessionals 2025-2026 2.24.26.pdf (104 KB)
HR 6 Increment Increases 2.24.26.pdf (73 KB)
HR 7 JD - Alternate Suspension Program Teacher (ASIP) 2.24.26.pdf (182 KB)
HR 8 JD - Learning Disabilities Teacher Consultant 2.24.26.pdf (177 KB)
HR 9 JD - Mental Health Clinician 2.24.26.pdf (197 KB)
HR 10 JD - Occupational Therapist 2.24.26.pdf (194 KB)
HR 11 JD - Physical Therapist 2.24.26.pdf (193 KB)
HR 12 JD - School Counselor (formerly Guidance Counselor) 2.24.26.pdf (197 KB)
HR 13 JD - School Psychologist 2.24.26.pdf (193 KB)
HR 14 JD - School Social Worker 2.24.26.pdf (178 KB)
HR 15 JD - Speech Language Specialist 2.24.26.pdf (193 KB)
HR 16 JD - Student Assistance Coordinator (SAC) 2.24.26.pdf (197 KB)

## 12. Old Business

| | |
|---|---|
| Subject : | A. Old Business |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 12. Old Business |
| Type : | Discussion, Information |

## 13. New Business

| | |
|---|---|
| Subject : | A. New Business |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |

| | |
|---|---|
| Category : | 13. New Business |
| Type : | Discussion, Information |

# 14. Public Comment

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 14. Public Comment |
| Type : | Procedural |

# Public Content

**For the purpose of commenting on any topic.**

Guidelines for Public Comment:

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;
2. Each statement made by a participant shall be limited to THREE minutes duration;
3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;
4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and
5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

# 15. Meeting Closing

| | |
|---|---|
| Subject : | A. Adjourn |
| Meeting : | Feb 26, 2026 - Board of Education Voting Meeting |
| Category : | 15. Meeting Closing |
| Type : | Action |
| Recommended Action : | Adjourn the Meeting |

# EXHIBIT F

ALL-STATE LEGAL EXHIBIT F

Tuesday, March 24, 2026
Board of Education Workshop / Voting Meeting
Middletown Township Public Schools Board of Education Meeting
This meeting will be held in the High School North Library, 63 Tindall Road, Middletown NJ 07748
The meeting will begin at 7:00 PM to allow the Board to meet in Executive Session, which is not open to the public.
The public portion of the meeting will begin at approximately 7:30 PM

# 1. Meeting Opening / Call to Order

| | |
|---|---|
| Subject : | A. Reading of the Sunshine Announcement |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

*"Adequate notice of this meeting was provided by sending such notice to the Asbury Park Press, The Middletown Patch, and the Middletown Township Public Schools District Website and the posting of such notice at the August T. Miner Administrative Offices and each elementary, middle, and secondary school in the district.*

| | |
|---|---|
| Subject : | B. Roll call |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# 2. Executive Session

| | |
|---|---|
| Subject : | A. Resolution for Executive Session |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 2. Executive Session |
| Type : | Action |
| Recommended Action : | Enter into Executive Session |

# Public Content

**NOW, THEREFORE, BE IT RESOLVED by the Middletown Township Board of Education that the Board enters into Executive Session to discuss the following items:**

**__x__ a. Confidential Matters per Statute or Court Order**

**_____ b. Matters Impairing Rights to Receive Federal Funds**

**_____ c. Matters Constituting Unwarranted Invasion of Individual Privacy**

_____ **d. Collective Bargaining Matters**

_____ **e. Acquisition of Real Property or Investment of Funds**

_____ **f. Matters Pertaining to Public Safety Procedures**

__x__ **g. Litigation, Contract Negotiations, or Matters of Attorney-Client Privilege**

__x__ **h. Personnel Matters**

_____ **i. Matters Resulting in the Imposition of Penalties upon an Individual**

**BE IT FURTHER RESOLVED, that items discussed in Executive Session may result in Board action when the Board reconvenes to Public Session.**

# 3. Reconvene to Public Session

| | |
|---|---|
| Subject : | A. Call To Order - Reconvene to Public Session |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |
| Subject : | B. Pledge of Allegiance |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |

# 4. Committee Reports

| | |
|---|---|
| Subject : | A. Curriculum (Deborah Wright) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | B. Facilities (Joan Minnuies) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | C. Finance (Chris Aveta) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

| | |
|---|---|
| Subject : | D. Personnel (Frank Capone) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | E. Student Services (Erin Torres) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | F. Shared Services (Chris Aveta) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

## 5. Public Comment on Agenda Action Items Only

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 5. Public Comment on Agenda Action Items Only |
| Type : | Procedural |

# Public Content

**For the purpose of commenting on agenda items that the Board will be taking action on this evening.**

Guidelines for Public Comment:

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;

2. Each statement made by a participant shall be limited to THREE minutes duration;

3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;

4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and

5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

## 6. Proclamation

| | |
|---|---|
| Subject : | A. Child Abuse Prevention Month |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 6. Proclamation |
| Type : | Information, Procedural |

# Public Content

**WHEREAS,** child abuse and neglect are significant challenges that impact every segment of our community, and ensuring the safety of our youth requires the collective vigilance and action of all citizens; and

**WHEREAS,** our children are our most precious resource and the architects of Middletown Townships future, deserving a childhood free from fear and harm; and

**WHEREAS,** the trauma of child abuse can result in enduring psychological, emotional, and physical consequences that affect a student's ability to learn, grow, and thrive; and

**WHEREAS,** effective prevention thrives through robust partnerships between educators, healthcare providers, faith-based organizations, law enforcement, and families; and

**WHEREAS,** the Middletown Township Public Schools recognize our critical role as a safe haven for students, committed to fostering stable, nurturing environments that promote the social and emotional well-being of every family; and

**WHEREAS,** proactive education and early intervention remain the most effective defenses in protecting our children and strengthening our community; now

**THEREFORE, BE IT RESOLVED,** that the Middletown Township Board of Education hereby recognizes April 2026 as **National Child Abuse Prevention Month** and calls upon all staff, students, and residents to renew their commitment to protecting the children of Middletown.

| | |
|---|---|
| Subject : | B. Autism Acceptance Month |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 6. Proclamation |
| Type : | Information, Procedural |

# Public Content

**WHEREAS,** we celebrate the unique perspectives and diverse talents of our students on the autism spectrum on April 2, 2026, World Autism Awareness Day, and throughout the entire year; and

**WHEREAS,** autism is a lifelong neurological difference that shapes how individuals perceive the world and interact with others, requiring a commitment to understanding and tailored support; and

**WHEREAS,** while autism presents unique challenges, it is well-documented that early access to specialized support, inclusive environments, and evidence-based interventions empowers individuals to reach their full potential and lead fulfilling lives; and

**WHEREAS,** the Middletown Township Public Schools have pioneered an exemplary Autistic Program, achieving excellence through the dedication of our administrators, teachers, paraprofessionals, speech-language specialists, occupational therapists, physical therapists, and child study teams; now

**THEREFORE, BE IT RESOLVED,** that the Middletown Board of Education does hereby recognize April 2026 as **Autism Acceptance Month** in Middletown Township Public Schools, and urges all employees and students to engage in our district activities to foster a deeper understanding, celebrate neurodiversity, and ensure a culture of belonging for every student.

| | |
|---|---|
| Subject : | C. National Paraprofessional Appreciation Day |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 6. Proclamation |
| Type : | Information, Procedural |

# Public Content

**WHEREAS,** paraprofessionals provide essential services across diverse educational settings, offering critical instructional support, facilitating student activities, and performing the countless vital tasks that ensure the success of our school community; and

**WHEREAS,** these dedicated professionals serve as a primary pillar of support for our students with specialized learning needs and disabilities, working with compassion and expertise to foster an environment of inclusion and belonging; and

**WHEREAS,** the individualized attention and skilled interventions provided by our paraprofessionals are fundamental to the academic achievement and personal growth of our students; and

**WHEREAS,** our paraprofessionals work with tireless commitment alongside teachers and administrators to bridge the gap between challenge and achievement for every learner; now

**THEREFORE, BE IT RESOLVED,** that the Middletown Township Board of Education does hereby recognize Friday, April 3, 2026, as**National Paraprofessional Appreciation Day** in the Middletown Township Public Schools; and

**BE IT FURTHER RESOLVED,** that the Board of Education extends its deepest gratitude and heartfelt appreciation to each of our paraprofessionals for their unwavering patience, their heart for service, and the profound impact they make on the lives of our students every single day.

| | |
|---|---|
| Subject : | D. Administrative Professional's Day |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 6. Proclamation |

| | |
|---|---|
| Type : | Information, Procedural |

# Public Content

**WHEREAS,** administrative professionals across our schools and departments serve as the vital link between students, staff, parents, and the Middletown community, ensuring the seamless operation of our educational environment; and

**WHEREAS,** these dedicated individuals are often the first point of contact for our families, providing essential support with professionalism, empathy, and a commitment to the well-being of every person who enters our doors; and

**WHEREAS,** the Middletown Township Board of Education recognizes that the success of our students and the efficiency of our professional staff depend heavily on the organizational expertise and tireless efforts of our administrative teams; and

**WHEREAS,** their multifaceted contributionsfrom managing complex logistics to fostering a welcoming school cultureare indispensable to the mission of our district; now

**THEREFORE, BE IT RESOLVED,** that the Middletown Township Board of Education does hereby recognize Wednesday, April 22, 2026, as **Administrative Professionals Day** in Middletown Township Public Schools; and

**BE IT FURTHER RESOLVED,** that the Board expresses its profound gratitude to our administrative professionals for their dedicated service, resourcefulness, and unwavering commitment to the excellence of our schools and community.

## 7. Reports

| | |
|---|---|
| Subject : | A. Board President's Report |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 7. Reports |
| Type : | Information, Reports |
| Subject : | B. Superintendent's Report |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 7. Reports |
| Type : | Information, Reports |

## 8. Approval of Meeting Minutes

| | |
|---|---|
| Subject : | A. Executive Session Meeting Minutes February 19, 2026 |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |

| | |
|---|---|
| Recommended Action : | Approve the Executive Session Meeting Minutes of February 19, 2026. |
| Subject : | B. Workshop Meeting Minutes February 19, 2026 |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Workshop Meeting Minutes of February 19, 2026. |
| Subject : | C. Executive Session Meeting Minutes February 26, 2026 |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Executive Session Meeting Minutes of February 26, 2026. |
| Subject : | D. Regular Voting Meeting Minutes February 26, 2026 |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 8. Approval of Meeting Minutes |
| Type : | Action, Minutes |
| Recommended Action : | Approve the Regular Voting Meeting Minutes of February 26, 2026. |

# 9. Business Office - Consent Agenda

| | |
|---|---|
| Subject : | A. Board Secretary's Monthly Certification |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 9. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Accept the certification Pursuant to N.J.A.C. 6A:23A-16.10(c) 3, the School Business Administrator / Board Secretary certifies that as of February 28, 2026 no line item account has encumbrances and expenditures, which in total exceed the line appropriation in violation of N.J.A.C. 6A:23-2.11(a). |
| Subject : | B. Board Secretary's Report |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 9. Business Office - Consent Agenda |
| Type : | Action (Consent) |

| | |
|---|---|
| Recommended Action : | Approve the Report of the Secretary for the month of February, as per Attachment BA-1. |

### File Attachments

BA-1 Board Secretary Report 3.24.26.pdf (124 KB)

| | |
|---|---|
| Subject : | C. Transfer of Funds |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 9. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Fund Transfers for February, as per Attachment BA-2. |

### File Attachments

BA-2 Transfers 3.24.26.pdf (53 KB)

| | |
|---|---|
| Subject : | D. Bills List |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 9. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Bill List for the period of February 25, 2026 through March 24, 2026, as per Attachment BA-3. |

### File Attachments

BA-3 Bills List 3.24.26.pdf (237 KB)

| | |
|---|---|
| Subject : | E. Transportation Routes |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 9. Business Office - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Transportation Routes, as per attachment Finance-1. |

### File Attachments

Finance-1 Transportation 3.24.26.pdf (45 KB)

## 10. Recommendations of the Superintendent of Schools - Consent Agenda

| | |
|---|---|
| Subject : | A. 2026-2027 Tentative Budget |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |

Category : 10. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action

Recommended Action : Approval to adopt the Tentative Budget for Fiscal Year 2026-2027.

# Public Content

The Superintendent recommends approval to adopt the Tentative Budget for FY 2026-2027:

**BE IT RESOLVED**, that the tentative budget be approved for the 2026-2027 School Year using the 2026-2027 state aid figures and the School Business Administrator/Board Secretary be authorized to submit the following tentative budget to the Executive County Superintendent of Schools for approval in accordance with the statutory deadline:

| | | General Fund | Special Revenue | Debt Service | TOTAL |
|---|---|---|---|---|---|
| 2026-2027 Total Expenditures | | $199,552,927 | $4,443,710 | $6,505,975 | $210,502,612 |
| Less: Anticipated Revenues | | $ 19,385,552 | $4,443,710 | $1,256,133 | $ 25,085,395 |
| Taxes to be Raised | | $180,167,375 | $0 | $5,249,842 | $185,417,217 |

And to post said tentative budget on the district's website in accordance with the form required by the State Department of Education and according to law; and

**BE IT FURTHER RESOLVED**, that a public hearing will be held at the Middletown Township Board of Education located at Middletown High School North on April 28, 2026 at 7:00 p.m. for the purpose of conducting a public hearing on the budget for the 2026-2027 School Year.

**Capital Reserve Deposit - Other Capital Projects**

**BE IT RESOLVED**that included in the general fund appropriations is $500,000 for deposit into the Board of Education's approved Capital Reserve Account for future funding of facilities improvements and represent expenditures for construction elements or projects that are in addition to the facilities efficiency standards necessary to achieve the New Jersey Student Learning Standards.

**Travel and Related Expense Reimbursement 2026-2027**

**WHEREAS**, the Middletown Township Board of Education recognizes school staff and Board members will incur travel expenses related to and within the scope of their current responsibilities and for travel that promotes the delivery of instruction or furthers the efficient operation of the school district; and

**WHEREAS**, N.J.A.C. 6A:23A-7.3 et seq. requires Board members to receive approval of these expenses by a majority of the full voting membership of the Board and staff members to receive prior approval of these expenses by the Superintendent of Schools and a majority of the full voting membership of the Board; and

**WHEREAS**, the Middletown Township Board of Education established $150,000 as the maximum travel amount for the current school year and has expended $ 14,000 as of this date; now

**THEREFORE, BE IT RESOLVED**, the Board of Education approves travel and related expense reimbursements in accordance with N.J.A.C. 6A:23A-7.3, to a maximum expenditure of $75,000 for the 2026-2027 school year.

## File Attachments

2026-2027 Tentative Budget Presentation -March 24, 2026 for agenda.pdf (1,834 KB)

| | |
|---|---|
| Subject : | B. Harassment, Intimidation and Bullying - HIB Report |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the Report on Harassment, Intimidation and Bullying (HIB), as per Attachment Superintendent-1. |

## File Attachments

Superintendent-1 HIB Table 3.24.26.pdf (37 KB)

| | |
|---|---|
| Subject : | C. Student Safety Data System Summary Report |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve the SSDS Summary Report on Incidents of Violence, Vandalism, Weapons and Substance Offense for the month of February. |

# Public Content

**SSDS Summary Report:**

| | **2025** | | | | **2026** | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **District Tally** | **Sept.** | **Oct.** | **Nov.** | **Dec.** | **Jan.** | **Feb.** | **March** | **April** | **May** | **June** |
| **Violence** | 3 | 5 | 2 | 4 | 2 | 6 | 0 | 0 | 0 | 0 |
| **Vandalism** | 0 | 0 | 0 | 0 | 1 | 0 | 0 | 0 | 0 | 0 |
| **Weapons** | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **Substance Abuse** | 3 | 6 | 3 | 2 | 6 | 5 | 0 | 0 | 0 | 0 |

Subject : D. Suspension Report

Meeting : Mar 24, 2026 - Board of Education Workshop / Voting Meeting

Category : 10. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve the Suspension Report, as per Attachment Student Activities-1.

Subject : E. Revised 2025-2026 School Calendar

Meeting : Mar 24, 2026 - Board of Education Workshop / Voting Meeting

Category : 10. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve the Revised 2025-2026 School Calendar, as per Attachment Superintendent-2.

## File Attachments

Superintendent-2 Revised 2025-2026 School Calendar 3.24.26.pdf (470 KB)

Subject : F. Home Instruction

Meeting : Mar 24, 2026 - Board of Education Workshop / Voting Meeting

Category : 10. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Home Instruction Students.

# Public Content

| Student ID | Start Date | End Date |
|---|---|---|
| 17906 | 3/2/26 | 5/1/26 |
| 11724 | 3/11/26 | 5/11/26 |
| 28983 | 2/27/26 | 3/4/26 |
| 17372 | 2/23/26 | 3/17/26 |
| 15954 | 2/19/26 | 3/20/26 |
| 23770 | 3/14/26 | 5/20/26 |
| 21207 | 3/3/26 | 3/20/26 |
| 17473 | 3/6/26 | 3/15/26 |
| 19571 | 2/25/26 | 4/25/26 |
| 11715 | 3/20/26 | 5/20/26 |
| 24697 | 3/30/26 | 5/30/26 |
| 19141 | 2/13/26 | 3/20/26 |
| 21718 | 3/6/26 | 5/6/26 |
| 24902 | 2/19/26 | 4/17/26 |
| 15837 | 2/19/26 | 3/12/26 |

Subject : G. Special Education Out of District Placements

Meeting : Mar 24, 2026 - Board of Education Workshop / Voting Meeting

Category : 10. Recommendations of the Superintendent of Schools - Consent Agenda

Type : Action (Consent)

Recommended Action : Approve Out of District Placements.

# Public Content

| Student ID | Placement | Start Date | End Date | Cost |
|---|---|---|---|---|
| 19058 | Collier School | 2/19/26 | 6/18/26 | $383 per day |
| 22756 | Matawan-Aberdeen Board of Education | 3/12/26 | 6/23/26 | $5,752.70 per month |
| 10617 | Children's Center of Monmouth County | 4/13/26 | 6/16/26 | $584.61 per day |
| 18171 | Regional Achievement Academy | 3/17/26 | 6/18/26 | $8,300 per month |
| 21816 | Collier School | 3/16/26 | 6/18/26 | $191.50 per day |

Subject : H. Special Education Contracted Service Providers

| | |
|---|---|
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Contracted Service Providers for Special Education Services. |

# Public Content

| Provider | Services | Rates |
|---|---|---|
| Brain Behavior Bridge, LLC | Neuropsychological Student Consultation<br>Neuropsychological Student Assessment & Observation<br>Neuropsychological Program Evaluation<br>Post Evaluation Check In and Progress Report<br>*Travel Fees - Up to one hour / Greater than one hour<br>*Forensic Fee | $500 per hour<br>$3,995 each plus fees*<br>$3,995 each plus fees*<br>$1,500 each plus fees*<br>$250 / $500<br>$500 perhour |

| | |
|---|---|
| Subject : | I. Professional Development of Staff |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Staff Attendance of Conferences, Workshops, In-Service and Seminars, as per Attachment Curriculum-1. |

### File Attachments

Curriculum-1 Professional Development 3.24.26.pdf (50 KB)

| | |
|---|---|
| Subject : | J. Field Trips |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Field Trip Destinations for the 2024-2025 School Year as per Attachment Curriculum-2. |

### File Attachments

Curriculum-2 Field Trip 3.24.26.pdf (51 KB)

| | |
|---|---|
| Subject : | K. Personnel |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 10. Recommendations of the Superintendent of Schools - Consent Agenda |
| Type : | Action (Consent) |
| Recommended Action : | Approve Personnel Report and HR Attachments. |

### File Attachments

Personnel Committee Report 3.24.26.pdf (145 KB)
HR 1 Student Teaching 3.24.26.pdf (122 KB)
HR 2 Special Contracts - Coaches 3.24.26.pdf (380 KB)
HR 3 Paraprofessionals 2025-2026 3.24.26.pdf (16 KB)
HR 4 JD - Assistant Athletic Coach 3.24.26.pdf (225 KB)
HR 5 JD - Athletic Equipment Manager 3.24.26.pdf (194 KB)
HR 6 JD - Athletic Trainer 3.24.26.pdf (225 KB)
HR 7 JD - Board Certified Assistant Behavior Analyst (BCaBA) 3.24.26.pdf (227 KB)
HR 8 JD - Board Certified Behavior Analyst (BCBA) 3.24.26.pdf (218 KB)
HR 9 JD - Director of Athletics 3.24.26.pdf (224 KB)
HR 10 JD - Head Athletic Coach 3.24.26.pdf (225 KB)
HR 11 JD - Middle School Athletic Manager 3.24.26.pdf (194 KB)
HR 12 JD - Registered Behavior Technician 3.24.26.pdf (227 KB)

# 11. Old Business

| | |
|---|---|
| Subject : | A. Old Business |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 11. Old Business |
| Type : | Discussion, Information |

# 12. New Business

| | |
|---|---|
| Subject : | A. New Business |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 12. New Business |
| Type : | Discussion, Information |

# 13. Public Comment on Non-Agenda Items

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Mar 24, 2026 - Board of Education Workshop / Voting Meeting |
| Category : | 13. Public Comment on Non-Agenda Items |

Type : Procedural

# Public Content

**For the purpose of commenting on any topic.**

Guidelines for Public Comment:

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;
2. Each statement made by a participant shall be limited to THREE minutes duration;
3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;
4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and
5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

## 14. Meeting Closing

Subject : A. Adjourn

Meeting : Mar 24, 2026 - Board of Education Workshop / Voting Meeting

Category : 14. Meeting Closing

Type : Action

Recommended Action : Adjourn the Meeting

# EXHIBIT G

G

Tuesday, April 21, 2026
Board of Education Workshop Meeting

Middletown Township Public Schools Board of Education Meeting
This meeting will be held in the High School North Auditorium, 63 Tindall Road, Middletown NJ 07748
The meeting will begin at 7:00 PM to allow the Board to meet in Executive Session, which is not open to the public.
The public portion of the meeting will begin at approximately 7:30 PM

## 1. Meeting Opening / Call to Order

| | |
|---|---|
| Subject : | A. Reading of the Sunshine Announcement |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

# Public Content

*"Adequate notice of this meeting was provided by sending such notice to the Asbury Park Press, The Middletown Patch, and the Middletown Township Public Schools District Website and the posting of such notice at the August T. Miner Administrative Offices and each elementary, middle, and secondary school in the district.*

| | |
|---|---|
| Subject : | B. Roll call |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 1. Meeting Opening / Call to Order |
| Type : | Procedural |

## 2. Executive Session

| | |
|---|---|
| Subject : | A. Resolution for Executive Session |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 2. Executive Session |
| Type : | Action |
| Recommended Action : | Enter into Executive Session |

# Public Content

**NOW, THEREFORE, BE IT RESOLVED by the Middletown Township Board of Education that the Board enters into Executive Session to discuss the following items:**

**__x___ a. Confidential Matters per Statute or Court Order**

**_____ b. Matters Impairing Rights to Receive Federal Funds**

**_____ c. Matters Constituting Unwarranted Invasion of Individual Privacy**

**__x___ d. Collective Bargaining Matters**

**_____ e. Acquisition of Real Property or Investment of Funds**

**_____ f. Matters Pertaining to Public Safety Procedures**

**_____ g. Litigation, Contract Negotiations, or Matters of Attorney-Client Privilege**

**__x___ h. Personnel Matters**

**_____ i. Matters Resulting in the Imposition of Penalties upon an Individual**

**BE IT FURTHER RESOLVED, that items discussed in Executive Session may result in Board action when the Board reconvenes to Public Session.**

# 3. Reconvene to Public Session

| | |
|---|---|
| Subject : | A. Call To Order - Reconvene to Public Session |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |
| Subject : | B. Pledge of Allegiance and Moment of Silence |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 3. Reconvene to Public Session |
| Type : | Procedural |

# Public Content

The district has learned of the recent passing of two former district employees, Joan Bace and Geraldine Kacen. Joan worked in thepayroll department for over 16 years before retiring from her central office position in 2015. Geraldine was an elementary school teacher in the district for over 38 years before retiring from Middletown Village Elementary School in 2005.
We extend our deepest sympathy to the Baceand Kacen families.

# 4. Committee Reports

| | |
|---|---|
| Subject : | A. Curriculum (Deborah Wright) |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | B. Facilities (Joan Minnuies) |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |

| | |
|---|---|
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | C. Finance (Chris Aveta) |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |
| Subject : | D. Student Services (Erin Torres) |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 4. Committee Reports |
| Type : | Information, Reports |

# 5. Reports

| | |
|---|---|
| Subject : | A. Board President's Report |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Reports |
| Type : | Information, Reports |
| Subject : | B. Superintendent's Report |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 5. Reports |
| Type : | Information, Reports |

# 6. Review Draft Voting Agenda

| | |
|---|---|
| Subject : | A. Review DRAFT April 28, 2026 Voting Meeting Agenda |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 6. Review Draft Voting Agenda |
| Type : | Discussion, Information |

# 7. Old Business

| | |
|---|---|
| Subject : | A. Old Business |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 7. Old Business |
| Type : | Discussion, Information |

# 8. New Business

| | |
|---|---|
| Subject : | A. New Business |

| | |
|---|---|
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 8. New Business |
| Type : | Discussion, Information |

## 9. Public Comment

| | |
|---|---|
| Subject : | A. Public Comment (30 Minutes) |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 9. Public Comment |
| Type : | Procedural |

# Public Content

Guidelines for Public Comment:

Please remember this is a public meeting. Anything you say will be a public record. As a result, pursuant to law, the Board of Education cannot respond to you publicly concerning certain matters, such as those regarding an individual student. If there is a matter that you wish to remain private concerning personnel or students, please contact the Superintendent's office. Public comment periods shall also be governed by the following rules:

1. A participant must be recognized by the Board President or presiding officer and must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable;
2. Each statement made by a participant shall be limited to THREE minutes duration;
3. No participant may speak more than once on the same topic until all others who wish to speak on that topic have been heard;
4. All statements, questions, or inquiries shall be directed to the Board President and any questions or inquiries directed by a participant to another Board member shall be redirected to determine if such statement, question, or inquiry shall be addressed on behalf of the Board or by the individual Board member; and
5. Questions requiring investigation shall be referred by the Board to the Superintendent's office for consideration and later response. A participant may be asked to submit such questions in written format.

## 10. Meeting Closing

| | |
|---|---|
| Subject : | A. Adjourn |
| Meeting : | Apr 21, 2026 - Board of Education Workshop Meeting |
| Category : | 10. Meeting Closing |
| Type : | Action |
| Recommended Action : | Adjourn the Meeting |

# EXHIBIT H

EXHIBIT H

ROSHAN D. SHAH, ESQ. (042302009)
**SHAH LAW GROUP, LLC**
**ATTORNEYS AT LAW**
1040 Broad Street, Suite 304
Shrewsbury, NJ 07702
Telephone: (732) 398-6545
Facsimile: (732) 576-0027
*Attorneys for Petitioners Kristin Rooney, Scott McPherson, Emilie Donohue, Jessica Donohue, Melissa Daus, Megan Daus and Kathleen Young*

| | |
|---|---|
| KRISTIN ROONEY, SCOTT MCPHERSON, EMILIE DONOHUE, JESSICA DONOHUE, MELISSA DAUS, MEGAN DAUS AND KATHLEEN YOUNG,<br><br>Petitioners,<br><br>v.<br><br>MIDDLETOWN TOWNSHIP BOARD OF EDUCATION,<br><br>Respondent. | STATE OF NEW JERSEY<br>COMMISSIONER OF EDUCATION<br><br>AGENCY DOCKET NO.<br><br>CIVIL ACTION<br><br>**PETITION OF APPEAL** |

Petitioners Kristin Rooney, Scott McPherson, Emilie Donohue, Jessica Donohue, Melissa Daus, Megan Daus, and Kathleen Young, by and through their attorneys, Shah Law Group, LLC, respectfully request that the Commissioner of Education consider a controversy which has arisen between Petitioners and Respondent Middletown Township Board of Education a/k/a Middletown Township Public Schools ("MTPS"), whose address is 834 Leonardville Road, 2nd Floor, Leonardo, NJ 07737, pursuant to N.J.S.A. § 18A:6-9 and the authority of the Commissioner to hear controversies and disputes arising under the school laws:

## PRELIMINARY STATEMENT

On February 26, 2026, Respondent MTPS voted (5-4) to begin the process of closing three district schools—Leonardo Elementary School, Navesink Elementary School, and Bayshore Middle School[1]—based on purported fiscal concerns. MTPS has publicly urged that its decision was made after careful deliberation with its outside consultant, Ross Haber, and that it is merely following his recommendation.

Nothing could be further from the truth. What the district's own documents show is that, after Haber publicly recommended rezoning 119 students on January 27, 2026, and declined to recommend school closures, MTPS's Business Administrator, Amy Doherty, instructed him to revise his recommendation to fit the "objective of closing two schools":

> closings. When you presented the information last week you said that the options presented were the least disruptive. I think we also need to have the work that was done related to the objective of closing two schools, whether it's a more disruptive plan or if the conclusion is that closing two schools would not be your recommendation.

Haber dutifully marched to Doherty's drum, giving another public presentation just a couple weeks later, this time stating that closing three schools before September—and relocating over 1000 children and staff—was less disruptive than rezoning 119 children. On its face that should strike any rational person as illogical. MTPS didn't pay for an expert, it paid for an advocate and pointed him in a predetermined direction.

MTPS's school closure plan—one championed by President Christopher Aveta, Vice-President Frank Capone, Jacqueline Tobacco, Caterina Skalaski, and Sara Weinstein (collectively, the "Aveta Five") and Superintendent Dr. Jessica L. Alfone, Ed.D.—is reckless and driven by agendas, not facts. The plan fails to consider the most basic criteria

---

[1]MTPS's anticipated contention that shuttering Bayshore Middle School, relocating its students and staff, and then re-opening it as an elementary school is not a "closure" is utterly nonsensical and speaks to their determination to evade legal requirements.

required under state law and MTPS policy. The Aveta Five's plan will lead to overcrowding, compromise student safety, and yes, exacerbate school segregation by locking a large number of minority and poor children out of the Township's better performing high school, Middletown High School South. Such a plan violates Article I, ¶ 5 of the New Jersey Constitution, the regulation governing school closures, N.J.A.C. § 6A:26-7.5, as well as MTPS Policy 7113.1.

Despite vehement public outcry, including heartfelt statements by students about the closures' impact on them, the Aveta Five have remained steadfast in their mission. Not even the threat of suit deterred them from their pursuit, with Tobacco publicly remarking that lawsuits are meaningless because "we have insurance," and President Aveta dismissing parents because "the public doesn't get a vote, except [in] November."

Petitioners are seven parents whose children attend the MTPS schools and will be negatively impacted by the school closure plan. While President Aveta is correct that parents don't get to vote on board decisions, he's wrong in believing he and his majority bloc have the final say. The New Jersey Constitution guarantees Petitioners the right of administrative and judicial review. The Petitioners now seek to exercise that right and respectfully request, *inter alia*, that the Commissioner of Education void MTPS's February 26, 2026 resolution closing schools (the "Closure Resolution"), direct MTPS to comply with all applicable laws and regulations if it seeks to close schools in the future, and refer certain financial improprieties, as explained below, to the Office of Fiscal Accountability and Compliance for investigation.

**PARTIES**

1. Petitioner Kristin Rooney has been a Middletown resident since 2005. Ms. Rooney currently has two children in the district, including one at Middletown High School North and another at Bayshore Middle School. The MTPS's closure of schools will have a negative impact on her children's ability to access educational and extracurricular opportunities, and will force them to attend overcrowded and racially segregated schools.

2. Petitioner Scott McPherson is a lifelong Monmouth County resident and has been a Middletown resident for approximately 40 years, and is a product of the school system, having attended Ocean Avenue Elementary School, Thorne Middle School, and Middletown High School North. Mr. McPherson has two school-aged children, one who attends Leonardo Elementary School and another who attends Bayshore Middle School. The school closures will negatively impact both of his children by forcing them into overcrowded schools and depriving them of educational opportunities and necessary educational support.

3. Petitioner Emilie Donohue was born in Middletown in 1990 and currently resides in Atlantic Highlands. She attended Leonardo Elementary School, Bayshore Middle School, and Henry Hudson Regional School. She has two children, both of whom attend Navesink Elementary School, with one in the fifth grade and the other in fourth grade. The school closures will negatively impact both of her children, one of whom will be forced into attending an overcrowded Thorne Middle School, thereby negatively impacting his safety and mental health; and the other who will be zoned to attend a closed-down middle school that has no adequate physical plant for elementary students, curriculum, instruction, teaching staff, or support services.

4. Petitioner Jessica Donohue has been a Middletown resident since 2002 and attended Thorne Middle School for eighth grade and graduated from Middletown High School North in 2006. Ms. Donohue has a child who attends Leonardo Elementary School. The MTPS's decision to close schools will negatively impact Ms. Donohue's child by forcing him into an overcrowded school, which is only expected to get worse based on the district's own projections, making him more vulnerable to bullying and other physical altercations and depriving him of adequate educational supports.

5. Petitioner Melissa Daus is a resident of Middletown Township and has lived here since 2014. She has three sons who attend Middletown Public Schools: one attends Navesink Elementary School, one attends Bayshore Middle School, and the oldest son attends Middletown High School South. MTPS's decision to close the schools will result in her sons being assigned to unfamiliar, inadequate schools that are farther from home and overcrowded.

6. Petitioner Megan Daus is a lifelong Monmouth County resident, born and raised in Middletown's Leonardo section. She attended Leonardo Elementary School, Bayshore Middle School, and Middletown High School South. Megan lives in a family home that has been occupied by five generations. She has two school-aged children—one currently attending Leonardo Elementary School and the other enrolled in Pre-K at Harmony. The closing of these schools will negatively impact both of her children by forcing them into overcrowded schools that are more segregated by race and class.

7. Petitioner Kathleen Young is a Middletown Township resident and has lived in Lincroft since 2021. She has two kids, both attend Lincroft Elementary School. MTPS's decision to close the schools will result in overcrowding at Thompson Middle School, thereby having a negative impact on both of her children.

8. Respondent MTPS is a public school district located in Monmouth County, NJ. The MTPS comprises nine members: President Aveta, Vice-President Capone, Tobacco, Skalaski, Sara Weinstein, Erin Torres, Deborah Wright, Joan Minnuies, and Mark Soporowski.

9. Aveta, Capone, Tobacco, Skalaski, and Weinstein voted in favor of closing schools on February 26, 2026.

10. Torres, Wright, Minnuies, and Soporowski voted against it.

11. MTPS is headed by Dr. Alfone, who has submitted her resignation papers and will leave MTPS at the end of June 2026. Dr. Alfone became the Superintendent in 2023. Dr. Alfone publicly announced her resignation well in advance of the MTPS's vote on the school closures.

## JURISDICTION

12. The Commissioner of Education has jurisdiction to hear this dispute pursuant to N.J.S.A. § 18A:6-9 because it arises under the laws and regulations governing schools.

13. The Commissioner's jurisdiction extends to "determin[ing] issues arising under the Open Public Meetings Act" when they relate, as they do here, to "controversies under the school laws." *Sukin v. Northfield Bd. of Ed.*, 171 N.J. Super. 184, 187 (App. Div. 1979).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I. The Middletown Township Public Schools District.

#### A. Overview Of MTPS.

14. Middletown was officially founded in 1664 and quickly settled under patents issued by then-English Deputy Governor Richard Nicolls on April 8, 1665.

15. Between 1665 and 1678, Middletown opened New Jersey's first English-language school, with John Smith serving as its teacher.

16. Other schools cropped up over the years, with the first publicly-funded schools starting in 1829.

17. For about 65 years, these small community-based schools were governed by local districts.

18. In 1894, a township-unified public school system formed, though high-school aged students continued to travel to other towns.

19. In 1911, Middletown Township High School opened at the Andrews Hotel in Navesink, and later moved to its own building in Leonardo, NJ, which is where Bayshore Middle School is located today.

20. Through the years, Middletown has developed into a thriving municipality, attracting over 65,000 residents and becoming an educational, medical, and cultural hub, providing convenient access to the Jersey Shore and New York City.

21. With the township's population, MTPS has also grown and currently boasts 16 schools, including 11 elementary schools, three middle schools, and two high schools (dates of opening in parentheses):

- Bayview Elementary School (1956)
- Fairview Elementary School (1931)

- Harmony Elementary School (1960)
- Leonardo Elementary School (1931)
- Lincroft Elementary School (1956)
- Middletown Village Elementary School (1940)
- Navesink Elementary School (1941)
- New Monmouth Elementary School (1968)
- Nut Swamp Elementary School (1964)
- Ocean Avenue Elementary School (1931)
- River Plaza Elementary School (1928)
- Bayshore Middle School (1931)
- Thompson Middle School (1960)
- Thorne Middle School (1960)
- Middletown High School North (1952)
- Middletown High School South (1974)

22. In 2020, MTPS closed a 12th elementary school, Port Monmouth Elementary School.

B. <u>MTPS Capacity, Enrollment, And Staffing.</u>

23. According to its Annual Comprehensive Financial Report (ACFR) for 2024-25, district-wide enrollment totaled 8,588 students. *See ACFR 2024-25 (Excerpts)*, *178, attached as Exhibit A.

24. In her Tentative Budget Presentation for 2025-26, Superintendent Alfone reported building capacity numbers as follows:

| Building | Capacity (Students) |
|---|---|
| High School North | 1849 |
| High School South | 1793 |
| Bayshore | 792 |
| Thompson | 930 |
| Thorne | 930 |
| Bayview | 665 |
| Fairview | 530 |
| Harmony | 863 |
| Leonardo | 366 |
| Lincroft | 485 |
| Mid. Village | 611 |
| Navesink | 326 |
| New Monmouth | 699 |
| Nut Swamp | 822 |
| Ocean Ave | 454 |
| River Plaza | 403 |

25. Based on the ACFR for 2024-25, enrollment broke down as follows at the building level across the last five years:

| SCHOOLS | ENROLLMENT | | | | | |
|---|---|---|---|---|---|---|
| | 2025 | 2024 | 2023 | 2022 | 2021 | 2020 |
| Bayview Elementary | 363 | 336 | 333 | 341 | 355 | 369 |
| Fairview Elementary | 291 | 300 | 302 | 302 | 302 | 289 |
| Harmony Elementary | 481 | 476 | 472 | 469 | 465 | 531 |
| Leonardo Elementary | 283 | 267 | 275 | 259 | 267 | 285 |
| Lincroft Elementary | 485 | 492 | 481 | 452 | 449 | 456 |
| Middletown Village | 426 | 437 | 454 | 425 | 408 | 393 |
| Navesink Elementary | 209 | 205 | 208 | 193 | 206 | 236 |
| New Monmouth Elementary | 508 | 510 | 498 | 486 | 467 | 359 |
| Nut Swamp Elementary | 464 | 502 | 510 | 519 | 514 | 557 |
| Ocean Avenue Elementary | 281 | 278 | 295 | 292 | 297 | 282 |
| Port Monmouth Elementary | N/A | N/A | N/A | N/A | N/A | 195 |
| River Plaza Elementary | 266 | 262 | 254 | 259 | 248 | 272 |
| Bayshore Middle School | 533 | 541 | 560 | 613 | 639 | 624 |
| Thompson Middle School | 860 | 858 | 878 | 917 | 939 | 978 |
| Thorne Middle School | 860 | 624 | 623 | 622 | 636 | 679 |
| Middletown High School North | 1,186 | 1,216 | 1,230 | 1,305 | 1,331 | 1,334 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Middletown High School South | 1,354 | 1,378 | 1,441 | 1,496 | 1,495 | 1,540 |

26. The number of MTPS teaching staff has ranged between 875 and 926 over the last 10 years, including 893 teachers for the 2024-25 school year. *Id.* at *178.

27. During that 10-year period, the student-to-teacher ratio ranged from between 12.6 and 11.2; for 2024-25, the ratio registered at 11.4. *Id.*

C. <u>MTPS's Budget Expenditures And Infrastructure.</u>

28. For 2024-25, MTPS's budget expenditures totaled $158,154,622, resulting in a cost per pupil of $18,416. *Id.*

29. These expenditures have remained roughly consistent through the years, with data showing 2016 budget expenditures amounted to $159,273,974 and hit a high-mark of $166,481,543 during the 2020 pandemic-addled year. *Id.*

30. Like most of the schools throughout this State, the MTPS's schools have aging infrastructure, with average maintenance costs of approximately $3.6 million over the last 10 years. *Id.* at *182.

31. Notably, however, the two elementary schools selected for closure, Leonardo Elementary School and Navesink Elementary School, have among the lowest maintenance costs, with each requiring less than $100,000 per year in maintenance work, except for in 2022, when Leonardo Elementary School needed approximately $106,000 in repairs. *Id.*

32. In contrast, Bayview Elementary School, Harmony Elementary School, New Monmouth Elementary School, and Nut Swamp Elementary School regularly cruise into the $130,000+ range, with New Monmouth Elementary School requiring a whopping $200,521 in repair costs in 2022.

33. During the 2023-24 school year, the Spiezle Architectural Group conducted a study and produced a Facilities Assessment Budget (the "Spiezle Report") that provided projections for what it would cost to upgrade MTPS's schools. A copy of the Spiezle Report is attached as Exhibit B.

34. The Spiezle Report shows the following upgrade costs for each of MTPS's schools:

| Facility | Site | Building Envelope | Building Interior | Programming | MEP | Notes |
|---|---|---|---|---|---|---|
| High School North | $15,672,982 | $12,613,465 | $20,162,853 | $35,043,876 | $19,088,605 | |
| High School South | $14,693,757 | $6,857,565 | $19,520,273 | $29,831,185 | $32,150,249 | |
| Bayshore MS | $12,238,653 | $8,118,000 | $10,294,475 | $18,438,956 | $12,066,010 | |
| Thompson MS | $14,265,918 | $6,355,125 | $11,868,614 | $21,163,370 | $11,022,833 | |
| Thorne MS | $17,711,893 | $7,731,273 | $11,828,249 | $16,790,495 | $10,738,772 | |
| Bayview ES | $3,293,515 | $2,931,695 | $4,386,633 | $13,375,503 | $6,836,798 | |
| Fairview ES | $1,483,384 | $3,766,428 | $3,710,652 | $12,624,552 | $5,055,985 | |
| Harmony ES | $2,874,586 | $3,339,382 | $7,332,788 | $14,133,468 | $8,951,256 | |
| Leonardo ES | $1,127,529 | $1,946,131 | $3,988,380 | $7,658,736 | $6,822,732 | |
| Lincroft ES | $2,302,270 | $3,000,241 | $3,151,565 | $15,740,967 | $6,463,121 | |
| Middletown Village ES | $2,484,062 | $2,933,190 | $3,915,685 | $13,617,208 | $7,469,716 | |
| Navesink ES | $1,265,353 | $1,853,710 | $2,171,125 | $12,595,136 | $5,386,659 | |
| New Monmouth ES | $4,240,538 | $2,305,888 | $6,953,993 | $13,630,722 | $7,583,576 | |
| Nut Swamp ES | $4,265,983 | $3,169,400 | $6,906,807 | $10,655,613 | $8,727,200 | |
| Ocean Avenue ES | $4,964,671 | $3,016,910 | $5,360,323 | $14,393,187 | $5,914,864 | |
| River Plaza ES | $2,156,881 | $2,610,165 | $3,925,758 | $5,755,003 | $6,735,398 | |
| TOTAL | **$105,041,974** | **$72,548,568** | **$125,478,173** | **$255,447,975** | **$161,013,770** | ***Includes contingencies and softcost. Cost assumes construction in Summer 2024. Excludes Hazardous material abatement and furniture cost.** |
| GRAND TOTAL | | | **$719,530,460** | | | |

*Spiezle Report*, *1, Exhibit B.

35. The Spiezle Report—which Petitioners contend uses unrealistic figures and doesn't account for a competitive bidding process—shows the following total upgrade costs for each school:

| Total Upgrade Costs Based On Spiezle Report | |
|---|---|
| **School** | **Total Budget ($)** |
| High School North | $102,581,781 |
| High School South | $103,053,029 |
| Bayshore Middle School | $61,156,094 |
| Thompson Middle School | $64,675,860 |
| Thorne Middle School | $64,800,682 |
| Bayview Elementary School | $30,824,144 |
| Fairview Elementary School | $26,641,001 |
| Harmony Elementary School | $36,631,480 |
| Leonardo Elementary School | $21,543,508 |
| Lincroft Elementary School | $30,658,164 |
| Middletown Village Elementary School | $30,419,861 |

| | |
|---|---|
| Navesink Elementary School | $23,271,983 |
| New Monmouth Elementary School | $34,714,717 |
| Nut Swamp Elementary School | $33,725,003 |
| Ocean Avenue Elementary School | $33,649,955 |
| River Plaza Elementary School | $21,183,205 |

36. As is evident, no rational school board member would take this data and conclude that Leonardo Elementary School and Navesink Elementary School are the financial albatross weighing down MTPS.

37. Yet, despite the data produced by its own retained consultant, certain MTPS board members took to social media to campaign for closing Navesink Elementary School and Leonardo Elementary School.

38. For example, on November 4, 2025, Tobacco posted on Facebook that Navesink Elementary School requires $16 million in "repairs":


Jacqueline Tobacco · 1h · Top contributor
Eric Dowell Eric you and I met at Town Hall and you seemed like a reasonable person but you have just continued to lie and accuse and defame my character and I get it- you want to save Navesink- a school we do not own that needs 16 million in repairs. My opinion has not changed- you shouldn't get to bully the town with misinformation and spread conspiracy theories and hurt people on fixed incomes- but here we are.
In addition, I would never vote for an NJEA Union Leader for ANY BOE position. Nothing personal against Mrs. Torres but the teachers have representation and a strong union already, putting the union leadership on the board is putting the thumb on the scale — and she is also conflicted on voting.
There were zero secret meetings for months— but again, I understand campaigning and you have been throwing shade all over the place.
Reply 1

39. Tobacco's statement was untrue; even the Spiezle Report doesn't contend that all of the budgeted costs are for "repairs."

40. For example, 33% of the district-wide upgrade costs are for "[p]rogramming," which can include line items such as upgrading the "Fashion Room" and "Mindfulness Room" at Middletown High School North, making the kitchen larger at Leonardo Elementary School, or constructing a new classroom addition at Navesink Elementary School. *Id.* at **2-3, 24-25, 32.

41. While these programming upgrades may be desirable, they are not "repairs."

42. Even Superintendent Alfone's Tentative Budget Presentation for 2025-26 doesn't show that Leonardo Elementary School and Navesink Elementary School require "upgrades" out of line with other elementary schools:

| SCHOOL | ESTIMATED UPGRADE COSTS (FROM MASTER FACILITIES ASSESSMENT) |
|---|---|
| High School North | $66,000,000 |
| High School South | $60,000,000 |
| Bayshore Middle | $30,000,000 |
| Thorne Middle | $40,000,000 |
| Thompson Middle | $44,000,000 |
| Bayview | $27,000,000 |
| Fairview | $14,000,000 |
| Harmony | $30,000,000 |
| Leonardo | $18,000,000 |
| Lincroft | $16,000,000 |
| Mid. Village | $17,000,000 |
| Navesink | $12,000,000 |
| New Monmouth | $20,000,000 |
| Nut Swamp | $22,000,000 |
| Ocean Ave | $16,000,000 |
| River Plaza | $16,000,000 |

D. <u>MTPS Student Demographic Information</u>

43. Data provided by MTPS to the New Jersey Department of Education ("NJDOE") shows the following district-wide demographic breakdown:

| Total Enrollment | White | Black | Hispanic | Asian | Native American | Hawaiian Native | Two or More Races |
|---|---|---|---|---|---|---|---|
| 8678 | 7030 | 145 | 984 | 179 | 5 | 7 | 328 |

44. As will become important later in this Petition when discussing the racial impact of MTPS's decision to close schools, the 2024-25 demographic breakdown per school is below:

| School Name | Enrollment | White | Black | Hispanic | Asian | Native American | Hawaiian Native | Two or More Races |
|---|---|---|---|---|---|---|---|---|
| Bayshore Middle School | 534 | 421 | 10 | 67 | 12 | 0 | 0 | 24 |
| Bayview Elementary School | 364 | 287 | 7 | 53 | 2 | 1 | 2 | 12 |
| Fairview Elementary School | 291 | 236 | 3 | 23 | 17 | 0 | 0 | 12 |
| Harmony Elementary School | 481 | 376 | 7 | 75 | 10 | 0 | 0 | 13 |
| Leonardo Elementary School | 283 | 220 | 6 | 44 | 2 | 0 | 1 | 10 |
| Lincroft Elementary School | 486 | 425 | 1 | 28 | 17 | 0 | 0 | 15 |
| Middletown High School North | 1239 | 947.5[2] | 37 | 172.5 | 36 | 0 | 1 | 45 |
| Middletown High School South | 1382 | 1204.5 | 8 | 114.5 | 23 | 0 | 0 | 32 |
| Middletown Village Elementary School | 426 | 323 | 7 | 56 | 14 | 1 | 0 | 25 |
| Navesink Elementary School | 210 | 170 | 3 | 19 | 3 | 0 | 0 | 15 |
| New Monmouth Elementary School | 508 | 419 | 9 | 60 | 5 | 0 | 0 | 15 |
| Nut Swamp Elementary School | 464 | 417 | 0 | 34 | 2 | 0 | 0 | 11 |
| Ocean Avenue Elementary School | 283 | 180 | 22 | 53 | 7 | 1 | 0 | 20 |
| River Plaza Elementary School | 268 | 232 | 0 | 21 | 2 | 0 | 0 | 13 |

[2] We're not sure how the District ended up reporting a ½ student, as biracial students are reflected in the last column. This data is derived from the District's own records.

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Thompson Middle School | 862 | 725 | 6 | 76 | 16 | 1 | 1 | 37 |
| Thorne Middle School | 597 | 447 | 19 | 88 | 11 | 1 | 2 | 29 |

## II. The 2025 School Closure Plan

45. In 2025, the Board was comprised as follows: President Capone, Vice President Tobacco, Skalaski, Wright, Minnuies, Soporowski, Leonora Caminiti, Joe Fitzgerald, and Gary Tulp.

46. In March 2025, as part of her proposed budget, Superintendent Alfone proposed—without warning—to close Leonardo Elementary School, Navesink Elementary School, and Bayshore Middle School.

47. Under the plan, the facilities for Bayshore Middle School would be converted to an elementary school.

48. The plan (known as "Plan A") would transfer students from the closed elementary schools to the converted "Bayshore Elementary School. "

49. Moreover, all students from Bayshore Middle School would be transferred to Thorne Middle School and Thompson Middle School.

50. Dr. Alfone claimed Plan A was necessary to close a $10 million shortfall in the budget.

51. At a public board meeting on March 18, 2025, Fitzgerald expressed surprise about the dire financial picture Dr. Alfone presented, stating that he had served on the Board for two years and had never heard anything about a fiscal crisis.

52. At the meeting, Caminiti, Minnuies, Tulp, Wright, Tobacco, and Capone voted in favor of the budget proposal (which included school closures), while Skalaski, Fitzgerald, and Soporowski voted against it.

53. A firestorm engulfed the community, with county officials appealing directly to then-Governor Phillip D. Murphy for assistance.

54. Ultimately, the closures didn't occur because the NJDOE approved MTPS's participation in a new tax incentive program—designed specifically for districts that had historically underfunded their schools—that allowed MTPS to end-run the 2% cap on raising property taxes.

55. The increase was set at 10.1%, but that figure wasn't applied to the entire tax bill for a property owner.

56. Rather, the increase was to that portion of the tax bill that is allocated to the school.

57. Moreover, even under Dr. Alfone's misguided Plan A, the plan was to raise taxes by 4.88%, meaning the actual *increase* was a little over 5.2%.

58. None of these facts mattered to the sitting Board members, especially Tobacco, who repeated the lie that keeping Leonardo Elementary School and Navesink Elementary School open caused a 10.1% property tax increase.

59. As explained below, three candidates to the Board—Aveta, Weinstein, and James Cody (who ended up losing)—also seized on this misrepresentation and quickly used it to perpetuate the myth that these two elementary schools—which have a high percentage of minority and socio-economically disadvantaged students (when compared across all Middletown students)—were what burdened the cost of living in Middletown.

## III. The November 2025 Election.

A. Proven Leadership PAC.

60. On August 29, 2024, Proven Leadership PAC (the "PAC") registered with the New Jersey Election Law Enforcement Commission ("ELEC") as a Continuing Political Committee.

61. The PAC has a street address in Scotch Plains, NJ.

62. The PAC identified Joseph Sarno, III, as its Treasurer.

63. Mr. Sarno is an "Advisory Director" at Holman Frenia Allison, P.C. ("HFA"), the MTPS's outside auditor.

64. Based on its ELEC filings, the PAC didn't take in any money during 2024.

65. Then, on February 25, 2025, the PAC took in $14,000 in one single day. *See Proven Leadership PAC ELEC Filing, 2025*, attached as Exhibit C.

66. The source of the donations included not only vendors doing business with MTPS—such as HFA—but also some of New Jersey's most recognized construction and engineering firms—the exact type of firms that would benefit from shuttering schools and redeveloping the land.

67. The donors who donated on February 25, 2025, included for example:

- Remington & Vernick Engineers: $2000
- Trilon Services C-Corp, Holdings, Inc., an entity with the same business address in Denver, CO, as Trilon Group, LLC, a national infrastructure company: $1000
- Timeless Restore LLC d/b/a Servicemaster Store (via Bruce Wishnia): $1000
- Boro Engineering (via Albert Yodakis): $1000
- Local Union 400 IBEW PAC Fund: $2000

- Paramount Newco Realty (via Maurice Lekaria): $1000

68. The date of these donations—February 25, 2025 is also the *same date* that Dr. Alfone presented her plan to close schools in Executive Session.

B. The Race For Three School Board Seats And The PAC's Role.

69. Fitzgerald and Caminiti ran for re-election in November 2025, while Tulp did not run.

70. James Dobis and Torres also ran as newcomers.

71. On August 11, 2025, Aveta, Weinstein, and Cody filed Form D-2 with ELEC declaring their intent to run together under the committee name, "Students, Parents, Taxpayers."

72. The PAC—which had been lying-in-wait and had hardly spent any of the donations it received thus far—kicked in financial support.

73. Specifically, the PAC spent over $9,000 on a political consultancy firm—Archangel Strategy Group—which sent out printed mailers and began a digital campaign on behalf of Aveta, Weinstein, and Cody; the PAC also donated $1000 directly to Aveta, Weinstein and Cody's slate. *See Proven Leadership PAC 4th Quarter Expenditure Report*, attached as Exhibit D; *Proven Leadership PAC Supplemental Contributor and Expenditure Information*, attached as Exhibit E.

74. A copy of the mailer sent out on behalf of Aveta, Weinstein, and Cody identifies the PAC as its paid sponsor (as listed on the bottom):




75. On November 4, 2025, elections were held and yielded three new board members for the MTPS—Aveta, Weinstein and Torres—albeit by extremely slim margins:

| MIDDLETOWNTOWNSHIP | |
|---|---|
| Middletown Township Board of Education — Full Term — Vote for 3 | |
| | Votes |
| James G. Dobis | 10,758 |
| Christopher J. Aveta | 11,393 |
| James Cody | 11,197 |
| Sara Weinstein | 11,166 |
| Leonora E. Lacqua-Caminiti | 5,620 |
| Joseph Fitzgerald | 5,377 |
| Erin Torres | 11,213 |
| Write-in | 406 |
| Voting Districts Reporting | 49/49 |

## IV. The Haber Closure Report: A Proposal Whose Author Remains Unknown And Whose Namesake Denounced It.

### A. MTPS Retains Haber In April 2025, But Is Paying Him As Far Back As February 2025.

76. During the 2024-25 school year, MTPS retained Ross Haber Associates as a consultant.

77. Haber e-mailed Amy Doherty on April 2, 2025, submitting a proposal to analyze "Facility Utilization and School Boundaries" and prepare a report.

78. The following day, Doherty sent an e-mail to Superintendent Alfone attaching the proposal.

79. Doherty produced this e-mail thread pursuant to the Open Public Records Act.

80. While Doherty tried to redact damaging language, her methodology—a marker—was grossly insufficient:

[redacted]

*E-mail Between Doherty And Alfone, dated April 3, 2025*, attached as Exhibit F.

81. The "redacted" portion reads: "$25k for this work – I think we should seriously consider it though – would lend support to ***our planning***." *Id.* (emphasis added).

82. It's unclear who instructed Doherty to redact the e-mail, as there's no exception under OPRA that would permit this non-privileged communication to be redacted.

83. While the e-mail doesn't identify who "our" includes or what "plan[]" Doherty and Superintendent Alfone were seeking to "support," it's quite obvious today

that the Haber report was always intended to be a pretext to try and support school closures.

84. This is made even more evident based on Doherty's February 2, 2026 e-mail, as discussed below.

85. On or about April 5, 2025, MTPS approved Haber's proposal, which came in the form of a slide deck.

86. Based on the documents MTPS released, the public reasonably believed that MTPS first retained Haber in April 2025.

87. However, unbeknownst to even some Board members, Haber had actually been retained sometime in late 2024 or early 2025, as the MTPS's Bills List from February 2025, shows that MTPS cut Haber's firm a check for $7500 for an "Enrollment Projection and Demographic Study." *See Excerpt From Bills List, February 25, 2025*, attached as Exhibit G.

88. Despite OPRA requests, MTPS has never produced a contract or any other written agreement from prior to February 25, 2025, showing the exact scope of work for which Haber was retained.

89. Nor was any work product or deliverable shared with Board members.

90. Haber failed to produce any deliverables by the end of the 2024-25 school year regarding Facility Utilization and School Boundaries.

91. He failed to deliver any report during the summer either.

92. When the fall came and students returned to school, the Haber report remained absent.

93. Winter arrived, then Christmas, but the only gift MTPS received from Haber was another invoice, this one for $12,437.50. *See Excerpt From Bills List, December 16, 2025*, attached as Exhibit H.

94. MTPS's e-mails show that Haber didn't work on the report alone, but rather with Tim Ammon of Ammon Consulting Group ("ACG").

95. Ammon is copied on numerous e-mails with Superintendent Alfone and Doherty regarding the status of the report.

96. It does not appear that ACG was ever approved by the Board as a vendor.

B. The Haber Report Arrives, Ammon Exits Stage Left, And Doherty Reveals The MTPS's Actual "Objectives" In Hiring Haber.

97. On January 27, 2026, Haber and Ammon presented their findings to the public at a Board meeting.

98. The presentation included a slide deck, titled "Demographic Project: Presentation of Draft Results." *See Haber Rezoning Presentation, January 27, 2026*, attached as Exhibit I.

99. The underlying report was not released to the public.

100. Haber recommended rezoning MTPS's boundaries, thereby moving 119 students across six schools. *Id.* at *12.

101. The presentation stated that the "changes [] we are recommending should be sustainable over the period of these projections" (through 2031). *Id.* at *22.

102. The Haber Rezoning Presentation doesn't recommend any school closings. *See generally Id.*

103. At the meeting, Superintendent Alfone represented to the public that Haber was only producing a PowerPoint presentation, not a written report.

104. This representation occurs between 1:30:15 and 1:30:30 on the video of the meeting.[3]

105. She also represented that she was seeing the presentation for the first time during the meeting.

106. This representation occurs between 1:15:10 and 1:15:30 on the video of the meeting.

107. Based on her own e-mails, Superintendent Alfone misled the public.

108. On January 14, 2026, Haber e-mailed Superintendent Alfone the following:

> On Wed, Jan 14, 2026 at 5:20 PM Ross Haber <rhaber45@gmail.com> wrote:
>
> > Good evening:
> >
> > We will have the report mid-to-late morning on Friday. I think that before you send it to the board we should go through it and allow time for some edits. While it may not go into the Friday mailing, I think that you can ensure the Board that
>
> the final report (which may have some edits) can be in their hands by Monday.

109. Superintendent Alfone responded and inquired about a Friday meeting.

110. Haber responded:

[3] The video from the January 27, 2026 meeting is available at: MTPS Board of Education January Voting Meeting (01.27.26) (last visited on March 1, 2026).

On Thu, Jan 15, 2026 at 11:22 AM Ross Haber <rhaber45@gmail.com> wrote:

> Good Morning:
>
> We can do this at 2 or 3. We need to do this virtually because we can, if needed, make revisions edits as needed and
> ensure delivery (I think that Monday works if we have to make any kind of edits or changes.
>
> If so you should set it up and invite tim (tim@ammocg.com) me.
>
> Ross

111. Superintendent Alfone and Haber met virtually on or about January 15, 2026, to discuss his report.

112. Superintendent Alfone initiated the Google calendar invite, which Ammon and Doherty both accepted, along with Haber.

113. A copy of the e-mail thread between Superintendent Alfone and Haber between January 14, 2026 and January 15, 2026, is attached as Exhibit J.

114. Thus, Superintendent Alfone's representations about when she saw the Haber Rezoning Presentation and whether a report existed were blatantly false and misleading—she not only saw it, but she also helped edit it.

115. Less than one week after the January 27, 2026, Board meeting, Doherty gave away the plot.

116. On February 2, 2026, Doherty wrote to Haber and Ammon: "Thank you for attending our board meeting last week to present your draft analysis. Now that I have had an opportunity to consider the information, I have some questions."

117. Doherty is the Business Administrator, not a Board Member; it's unclear whether she even drafted the e-mail on her own to send to Haber or whether it was created by a Board member and sent to her as a means of evading the School Ethics Act's prohibition against administering the schools. *See* N.J.S.A. § 18A:12-24.1(d).

118. Doherty proceeded to write that "[her] understanding is that this work is not complete."

119. She then let the proverbial cat out of the bag by demanding (in writing): "[w]hen you presented the information last week you said that the options presented were the least disruptive. I think we also need to have the work that was done related to ***the objective of closing two schools***, whether it's a more disruptive plan or if the conclusion is that closing two schools would not be your recommendation." *See E-mail from Doherty to Haber and Ammon, dated February 2, 2026*, attached as Exhibit K. (emphasis added).

120. Let that sink in: the MTPS hired an educational consultant in April 2025 for a contract price of over $24,000 to conduct an enrollment and facilities study.

121. That "expert" then purportedly spent nine months conducting a study that was presented to the public on January 27, 2026, and which didn't recommend any school closures, but rather focused on school rezoning and called it the "least disruptive" path forward.

122. Less than one week later, Doherty tells the expert that she "need[s] to have the work that was done related to the objective of closing two schools[.]" *Id.*

123. When placed in the context of her sloppily redacted e-mail of April 3, 2025, Doherty's February 2, 2026, e-mail makes it beyond clear that she, Superintendent Alfone, along with the Aveta Five had looked at nothing else but school closures and were merely trying to create the requisite justification for it.

124. Ammon evidently rejected Doherty's invitation to alter his findings, and he seems to have removed himself from the process altogether.

125. Haber, on the other hand, danced to Doherty's tune—after all, Haber still needed the other half of his invoice paid.

126. That set the stage for the February 19, 2026 Board meeting.

## V. The February 19, 2026 Board Meeting

### A. The OPMA Violation.

127. On February 19, 2026, MTPS held another public meeting and had Haber (sans Ammon) present his findings again.

128. The meeting began at 7:00 p.m.

129. Shortly after, the Board went into Executive Session to discuss statutorily-mandated confidential matters, personnel matters, and collective bargaining matters. *See Executive Session Resolution, February 19, 2026*, attached as Exhibit L.

130. But the Board was actually meeting with Haber in closed session, as Board Member Minnuies admitted, before someone put a stop to it.

131. Such a meeting doesn't fall into any of the recognized categories for a public body to retire into executive session and certainly doesn't fall into the three specific categories identified by the Board.

132. Minnuies's admission can be seen between 18:14 and 18:40 on the video of the meeting.[4]

### B. Haber's Disastrous Presentation.

133. MTPS didn't release any new presentation in support of closures from Haber prior to the meeting, and didn't tell anyone that Haber was now shifting gears to school closures in response to Doherty's February 2nd e-mail.

[4] The video from the February 19, 2026 meeting is available here: MTPS Board of Education February Workshop Meeting (02.19.26) (last visited on March 1, 2026).

134. In fact, many members of the public attended the meeting to discuss the rezoning plan and their concerns about it.

135. Dr. Alfone began by telling the public she had "re-engaged" Haber and shared Plan A with him and that he "would be . . . sharing his findings from those ***conversations***[.]"

136. This pronouncement from Dr. Alfone took place between 3:55-4:41 on the video of the meeting.

137. Haber was so ill-prepared to present a plan on school closings that he couldn't even remember the names of the schools he proposed closing, frequently calling River Plaza Elementary School the "River Bank" school.

138. Try as he might to avoid it, Haber's nervousness and ill-preparation ultimately got the best of him.

139. He admitted that his initial proposal—which involved only "minor redistricting" to make better use of the instructional space—"was not met with the greatest enthusiasm by the district[.]"

140. This admission was made between the 5:43 and 6:05 mark on the video.

141. He even acknowledged (between 4:40 and 5:04) that "one of the requests from the district was ***could we find a way to close one or two or three schools***"—a flagrant admission that MTPS hired Haber with the expectation of, as Doherty said, providing "support to our plan[]."

142. Haber went on to state, without any analysis or written support, that the plan to close schools was the least disruptive. This is heard between 11:21 and 11:40 on the video.

143. Let that sink in: a purported educational expert opined that moving 119 students across six schools (*i.e.*, his plan formulated after nine months of work) is more disruptive than a plan to close three schools and relocate *over one thousand* children and staff (*i.e.*, his new recommendation, formulated ***two weeks*** after Doherty's e-mail and some "conversations").

144. When responding to Soporowski's question, Haber admitted he didn't examine the impact of the proposed changes on student outcomes. (12:49-12:56).

145. Haber admitted he didn't look into any financial impact either, as it wasn't part of the proposal (which, again, focused on enrollment and facilities usage). (26:19-26:28).

146. At another point, when Haber was asked about how closing schools will lead to overcrowding, he became flustered and admitted what everyone already knew: "I didn't do this study, so I'm only telling you what I read in the study beforehand." (15:37-16:05).

147. Haber's presentation went south so quickly that, when Minnuies inquired if the public could ask Haber questions, Superintendent Alfone quickly responded, "no" and that the public "was not going to get to engage with him." (17:58-18:07).

148. President Aveta quickly backed up Superintendent Alfone, stating that this is a "Board decision" and that "[t]he public doesn't get a vote[.]" (17:58-18:12; 48:15-48:28).

149. Two days after the meeting, MTPS sent an e-mail to parents attaching a report on Haber's letterhead and a presentation of unknown origin in support of school closings (the "MTPS Closure Presentation" and "Haber Closure Report" are attached as Exhibits M and N, respectively).

150. While the Haber Closure Report is dated February 17, 2026, it was never released to the public before the meeting on February 19th.

151. More importantly, Haber admitted he didn't prepare this report.

152. Specifically, at the February 19th meeting, when pressed on the plan to close schools, Haber became defensive and stated, "I didn't do that report but I think it's least disruptive," raising questions about who did.

153. This occurs between 19:39 and 19:41 on the video.

154. The answer to this riddle may appear in the metadata, as Superintendent Alfone sloppily released the Haber Closure Report in track changes format. *See Haber Closure Report*, Exhibit N.

155. Moreover, the MTPS Closure Presentation purports to identify costs savings that would occur by school closures.

156. But Haber admitted he didn't look at financial and budgetary impacts because "it was not part of [his] proposal." (26:19-26:28).

157. Thus, it's an open question as to who prepared the MTPS Closure Presentation.

158. In light of Haber's own admissions, Superintendent Alfone and President Aveta's desire to avoid having the public question him becomes evident.

## VI. The February 26th Meeting And The Vote To Close Schools.

### A. MTPS's Deception Leading Up To The February 26th Vote.

159. On Saturday, February 21, 2026, just two days after Haber's disastrous presentation, Superintendent Alfone sent out a district-wide e-mail blast to parents enclosing Plan A—*i.e.*, the 2024-25 proposal to close Leonardo Elementary School, Navesink Elementary School, and Bayshore Middle School.

160. A few days later, MTPS posted its agenda for the February 26, 2026 meeting.

161. Nothing on the agenda indicated that the Board would be voting on closing schools.

162. Board members publicly confirmed that no vote was scheduled.

163. For example, on Tuesday morning, Soporowski publicly confirmed on social media that no vote on school closures was scheduled.




164. The meeting commenced on February 26, 2026, as scheduled.

165. The agenda made no mention of a vote on school closures.

166. Shortly after the meeting commenced, the Board adjourned to Executive Session.

167. The Board declared it was retiring into Executive Session to discuss statutorily-mandated confidential matters, personnel matters, and collective bargaining matters. *See Executive Session Resolution, February 26, 2026*, attached as Exhibit O.

168. Instead, the Board discussed school closures.

169. How do we know? Because Soporowski admitted it in regular session after President Aveta lied about it.

170. Between 5:42:21 and 5:42:50, the video shows the following exchange.

171. A parent asks President Aveta directly and specifically whether school closures were discussed in Executive Session.[5]

172. President Aveta takes a long pause.

173. Then, without missing a beat, shamelessly leans into the microphone and says, "The answer is no."

174. Board Member Soporowski leans into the microphone and states, "that's a lie, we did...we sure did.

175. In fact, it appears Board members were discussing the plan to vote on school closures even before the meeting commenced.

176. After she voted "yes" to closing schools, Skalaski tearfully read a public statement to try and conjure up sympathy for how difficult the vote was for her.

177. Careful observers, however, would note that Skalaski's tears were falling onto a ***typewritten***, minutes-long statement located on her laptop computer, which she closed after speaking.[6] (5:10:24-5:14:20).

178. The Closure Resolution itself is a five-page, typed document, that was undoubtedly prepared well before the meeting. *Closure Resolution*, Exhibit P.

179. Upon returning from Executive Session, and without further discussion, President Aveta moved to amend the agenda to include a vote on school closures.

---

[5] The video from the February 26, 2026 meeting is available here: MTPS Board of Education February Voting Meeting (02.26.26) (last visited on March 1, 2026).
[6] This petition shall serve notice to Skalaski (and all other Board members) to preserve any and all documents, including electronically stored information and metadata, relating to the closure of schools.

180. His motion to amend passed 5-4, with the Aveta Five voting in favor.

B. The Vote On School Closures.

181. After placing the vote to close schools on the agenda, the Board opened up the floor to public comment.

182. Despite the presence of hundreds of people, including school-aged children pining to speak in defense of their community and schools, President Aveta attempted to limit public comment to 30 minutes.

183. When others objected, Capone attempted to limit speech to one hour.

184. This was an obvious attempt to limit the ability of stakeholders to speak.

185. In addition, the Board agenda stated that all speakers "must preface comments by an announcement of his/her name, address or municipality of residence, and group affiliation, if applicable[.]"

186. Demanding that speakers identify their group affiliation before speaking at a public meeting is a facial violation of the First Amendment, as well as Article I, ¶ 6 of the New Jersey Constitution., because it chills speech *See NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 453 (1958)[7].

187. Ultimately, the Board relented and allowed everyone to speak for three minutes, though President Aveta frequently cut off speakers just under three minutes[8] and once motioned for a police officer to confront another speaker who went over the allotted time by a mere 45 seconds.

---

[7] Petitioners reserve the right to commence a separate action in court if the Board refuses to alter this policy before its next meeting.

[8] Petitioners are reviewing videos of prior meetings to determine if President Aveta cuts off speakers who make favorable comments under three minutes, or lets them run past their time; such disparate treatment would be classic viewpoint discrimination under the First Amendment and Article I, ¶ 6 of the New Jersey Constitution.

188. Tobacco spent almost the entire meeting—which lasted several hours—looking down at her cell phone and refused to even engage with members of the public, effectively echoing President Aveta's sentiment from the February 19th meeting that the public didn't matter and that this was a "Board decision" and that "[t]he public doesn't get a vote[.]"

189. Similarly, Capone, Weinstein, and Skalaski sat silently throughout the meeting, totally unmoved as students with disabilities emotionally spoke about how forcing them out of their neighborhood schools would exacerbate their condition and hinder their development.

190. Superintendent Alfone and Doherty were equally silent throughout the hours-long public comment period, refusing to engage with the very community by which they are handsomely paid.

191. President Aveta was so checked out that, when a student came around to speak a second time, President Aveta demanded to know his name, even though the student had already disclosed it during his first comment.

192. After public comment ended, certain Board members who were opposed to the school closures continued to speak.

193. At one point, Torres, a teacher, discussed an active shooter situation that she experienced with her students this year.

194. Torres discussed how the plan to close schools would likely force overcrowding, thereby potentially resulting in students being placed in temporary classrooms (*i.e.*, trailers) outside the school building envelope, thereby making them more vulnerable and posing a risk to their safety.

195. In response, Board Member Tobacco asked, “Was there anything said by our superintendent or BA as to putting trailers on the schools?”

196. When Torres said she had asked for specifics, Tobacco cut her off and said, “I’m asking our superintendent.”

197. Superintendent Alfone didn’t directly respond.

198. Torres and Tobacco then continued their colloquy, with Torres making clear that her question was about whether temporary classrooms would now be necessary, considering the safety risks that currently existed for schools.

199. At no time did Superintendent Alfone or Doherty respond to this line of questioning about the need for temporary housing and the risk to student safety.

200. This exchange takes place between 4:40:11 and 4:44:01.

201. The fact that the MTPS Board hadn’t secured this most basic information—information that mitigates against a nightmare scenario for every parent—before voting in favor of school closures speaks to not only their ineptitude, but also their reckless disregard for student safety and overall callousness.

202. This attitude was on full display moments later, when Torres brought up the risk of lawsuits (such as this one) over the decision to close schools.

203. Tobacco responded by mockingly stating, “Ms. Torres, if we are sued, we have insurance.” (4:52:18-4:52:22).

204. School insurance is not an excuse for school board members to act recklessly, just as automobile insurance is not an excuse to drive under the influence.

205. The New Jersey School Ethics Act requires that “school board member[s] . . . uphold and enforce all laws, rules and regulations of the State Board of Education, and court orders pertaining to schools.” N.J.S.A. § 18A:12-24.1.

206. Tobacco's reckless attitude towards civil liability exposes MTPS's fisc (and herself) to uncovered risks, including punitive damages in actions at law.

207. None of the other four members of the Aveta Five—Weinstein, Skalaski, Capone or President Aveta—stepped in to rebuke Tobacco or otherwise note how distasteful her comment was, effectively signaling their approval.

208. After additional back and forth, the Board voted 5-4 in favor of school closures, with the Aveta Five forming the majority voting bloc.

209. The vote effectively results in adopting Plan A.

210. As set forth in the slide deck Superintendent Alfone sent around on February 21, 2026, Plan A has the following catastrophic consequences:

a. Leonardo Elementary School and Navesink Elementary school will close this upcoming school year;

b. Bayshore Middle School will also close and cease existing as a middle school;

c. Bayshore Middle School's facilities will be renovated and converted into an elementary school, and all students who previously attended Navesink Elementary School and Leonardo Elementary School will be relocated there;

d. The feeder patterns will now change as well:



*MTPS Closure Presentation*, *3, Exhibit M.

211. Prior to the restructuring, Leonardo Elementary School and Navesink Elementary School students would feed into Bayshore Middle School and then feed into Middletown High School South.

212. As President Aveta and Superintendent Alfone reminded parents multiple times in refusing to allow them to ask Haber questions on February 19th, the decision to close schools is a "Board decision."

213. What Superintendent Alfone and the Aveta Five failed to understand, though, is that our Constitution and state law still guarantee parents a voice in matters involving their children.

214. Petitioners now seek to exercise those rights and seek administrative review through the NJDOE (and, if necessary, judicial review through the appellate courts).

## CLAIMS FOR RELIEF

### Count I—Violation Of Article I, ¶ 5 Of The New Jersey Constitution And Law Against Discrimination, N.J.S.A. § 10:5-1, *et seq.*

215. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

216. "Our own State's policy against racial discrimination and segregation in the public schools has been long standing and vigorous, and our Commissioner of Education has been vested with broad power to deal with the subject[.]" *Booker v. Bd. of Ed. of City of Plainfield*, 45 N.J. 161, 173–74 (1965).

217. Indeed, the policy is etched into our State Constitution, which provides that "[n]o person shall be denied the enjoyment of any civil or military right . . . nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin." *See* N.J. CONST., Art. I, ¶ 5.

218. Notably, our State's founders adopted Article I, ¶ 5 of the New Jersey Constitution in 1947, seven years before the U.S. Supreme Court decided *Brown v. Board of Education*, 374 U.S. 483 (1954) and *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954) ("Segregation in public education is not reasonably related to any proper governmental objective, and thus it imposes on [Black] children of the District of Columbia a burden that constitutes an arbitrary deprivation of their liberty in violation of the Due Process Clause").

219. In fact, 2o years before Congress passed the Civil Rights Act of 1964, 42 U.S.C. § 2000a, *et seq.*, New Jersey passed the Law Against Discrimination ("LAD"), N.J.S.A. § 10:5-1, *et seq.*, whose purpose is to "eradicate the cancer of discrimination." *Jackson v. Concord Co.*, 54 N.J. 113, 124 (1969).

220. The LAD prohibits discrimination in places of public accommodation, such as schools.

221. This prohibition against discrimination extends not only to *de jure* segregation, but also *de facto* segregation.

222. As the *Booker* Court reasoned: "When in *Brown v. Board of Education of Topeka*, 374 U.S. 483 (1954), the Supreme Court struck down segregated schools, it recognized that they generate a feeling of racial inferiority and result in a denial of equal educational opportunities to the [Black] children who must attend them. Although such feeling and denial may appear in intensified form when segregation represents official policy, they also appear when segregation in fact, though not official policy, results from long standing housing and economic discrimination and the rigid application of neighborhood school districting." *Booker*, 45 N.J. at 168.

223. It makes no difference if the Aveta Five agree with these principles or the *Booker* Court's reasoning—this is the law in this State, and they have an obligation to comply with it.

224. To its credit, long before the Aveta Five arrived, MTPS had already recognized that the demographic trends within Middletown required some feeder adjustment to comply with *Brown*'s mandate, as well as the LAD and the Civil Rights Act of 1964.

225. Historically, the Leonardo and Navesink sections of Middletown had a significant percentage of minority families.

226. Moreover, in the aggregate (and regardless of race), these communities fell into a lower socioeconomic stratosphere than those families who lived in, for example, the Lincroft or Oak Hill section of Middletown.

227. Therefore, beginning in or around the 1970s, students who attended Leonardo Elementary School and Navesink Elementary School had a pathway—through the now slated-for-closure Bayshore Middle School—to attend Middletown High School South, which has traditionally been better resourced and produced better student outcomes than High School North.

228. In other words, students who attended Leonardo Elementary School or Navesink Elementary School would feed into Bayshore Middle School and then attend Middletown High School South.

229. Superintendent Alfone and the Aveta Five's plan forecloses that option and produces a disparate racial and socioeconomic impact.

230. Even at this stage, the statistical evidence is eye-catching.

231. By shutting out Leonardo and Navesink children from Middletown High School South, MTPS would effectively remove 100+ minority students (based on 2024-25 enrollment data) from that high school.

232. These students would now all matriculate from Bayshore Elementary School to Thorne Middle School and then to Middletown High School North (collectively, the "North Network").

233. But that's only the first step in this ill-conceived plan.

234. By changing the feeder pattern to send Fairview Elementary School students to High School South, MTPS effectively imported 247 White students.

235. While Fairview Elementary School has some minority students, sending them to Middletown High School South (through Thompson Middle School) doesn't make up for even 50% of the minority student loss caused by transferring Leonardo Elementary School and Navesink Elementary School students into the North Network.

236. The downstream impact at the high school level is dramatic, with Middletown High School South effectively becoming approximately 10% Non-White (90% White) and Middletown High School North effectively becoming approximately 25% Non-White (75% White).

237. In the long term, these figures will become even more dramatic.

238. That is because Superintendent Alfone and the Aveta Five's exclusionary feeder system exploits Middletown's affordable housing plan to further segregate schools.

239. Middletown's affordable housing plan—which pre-dates even the 2024-25 tentative decision to close schools[9]—allocates most of the affordable housing units to the northern side of the Township.

240. Indeed, in its submission to the U.S. Department of Housing and Urban Development (HUD) under the Community Development Block Grant (CDBG) Entitlement Program for years 2025-29, *see* 24 C.F.R. § 91.1, *et seq.*, Middletown focused exclusively on the North Middletown area, either for creating new affordable housing opportunities or rehabilitating aging affordable housing stock to make it more attractive to those seeking affordable housing. *See Middletown HUD Consolidated Plan and Action Plan (2025-29)*, *44.[10]

241. In its submission, Middletown admitted that African Americans, Hispanics, and Asians "experience a disproportionately greater housing need" based on income levels, and, therefore, benefit from affordable housing to a greater extent than their White counterparts. *See Id.* at *10.

[9] To be clear, neither the Township Mayor, nor the Township Council, has come forward in support of the plan to close schools and it's doubtful they would do so if they understood the dubious process by which the decision was reached or its segregationist impact.

[10] The submission is available at: https://middletownnj.org/DocumentCenter/View/11619/2025-2029-Consolidated-Plan-and-2025-Action-Plan (last visited on March 2, 2026).

242. Thus, as affordable housing stock rises in the northern part of town and becomes disproportionately occupied by school-aged minority children, the Aveta Five's feeder plan will push those students into the North Network.

243. But a racial impact is only one terrible consequence of the Aveta Five's plan; there's unfortunately more.

244. Eligibility for a reduced or free lunch is "the primary measure of student poverty and the one used to determine Title I eligibility." James E. Ryan, *Schools, Race, and Money*, 109 YALE L.J. 249, 273 (1999).

245. Based on data provided by the MTPS to the NJDOE for 2024-25, the feeder plan set forth by the Aveta Five will ensure that 80% of the students who receive reduced or free lunches will attend schools in the North Network.

246. This is a 15% increase from the current feeder system.

247. As noted above, as more affordable housing units come online on the north side, the 80% figure will increase, thereby intensifying a socioeconomic inequality that our State and the country as a whole are struggling to grapple with.

248. The fact that Superintendent Alfone and the Aveta Five *claimed* to have considered this data and signed off on it is problematic.

249. The Aveta Five's school closure plan, as embodied in the Closure Resolution, is unconstitutional and violates the LAD.

250. The Petitioners have been injured as a result.

## Count II: Violation Of N.J.A.C. § 6A:26-7.5

251. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

252. N.J.A.C. § 6A:26-7.5 sets forth the basic regulatory requirements that a district must undertake before closing schools.

253. The regulation lists a series of "assurances" that must be provided to the NJDOE's Division of Administration and Finance to close schools.

254. These assurances are intended to require a careful, deliberate process that demonstrates the board considered defined criteria.

255. This list of assurances requires that the board of education demonstrate, *inter alia*, that:

- "[t]he proposed closing is consistent with the school district's approved LRFP because . . . [t]he school district has demonstrated that sufficient school-building capacity exists to house students for the five years following the closing";
- "[t]he use of temporary facilities in the remaining schools does not result or increase from an overall facilities shortage caused by the school closing"; and
- "[t]he re-assignment of students to other schools in the school district does not produce, sustain, or contribute to unlawful segregation, separation, or isolation of student populations on the basis of race or national origin."

*See* N.J.A.C. § 6A:26–7.5(a).

256. The MTPS cannot demonstrate that its school closure plan meets these requirements.

257. At the outset, Superintendent Alfone cannot provide any assurance that adequate capacity exists to accommodate students impacted by the closures.

258. Take, for example, the closure of Bayshore Middle School and the need to now relocate over 500 students.

259. Those students will now be split between Thomspon Middle School and Thorne Middle School.

260. According to the Haber Closure Report and the MTPS Closure Presentation, the Aveta Five's plan would result in the following middle school enrollments (which petitioners contend vastly underestimates actual enrollments because they fail to account for new development):

THOMPSON

| YEAR | TOTAL |
|---|---|
| 2026 - 2027 | 961 |
| 2027 - 2028 | 946 |
| 2028 - 2029 | 969 |
| 2029 - 2030 | 981 |
| 2030 - 2031 | 945 |

THORNE

| YEAR | TOTAL |
|---|---|
| 2026 - 2027 | 968 |
| 2027 - 2028 | 989 |
| 2028 - 2029 | 1,003 |
| 2029 - 2030 | 1,001 |
| 2030 - 2031 | 1,003 |

261. But MTPS's own reported figures show that both Thorne and Thompson have capacity figures that max out at *930* students:

| Building | Capacity (Students) |
|---|---|
| High School North | 1849 |
| High School South | 1793 |
| Bayshore | 792 |
| Thompson | 930 |
| Thorne | 930 |
| Bayview | 665 |
| Fairview | 530 |
| Harmony | 863 |
| Leonardo | 366 |
| Lincroft | 485 |
| Mid. Village | 611 |
| Navesink | 326 |
| New Monmouth | 699 |
| Nut Swamp | 822 |
| Ocean Ave | 454 |
| River Plaza | 403 |

262. Thus, MTPS's own reported numbers show that closing Bayshore Middle School and converting it into an elementary school will necessarily lead to overcrowding at Thompson Middle School and Thorne Middle School.

263. MTPS acknowledges as much in its presentation, though it attempts to explain it away by stating that Thompson Middle School and Thorne Middle School experienced overcrowding between 2017 and 2022. *See MTPS Closure Presentation*, *7, attached as Exhibit M.

264. Because those schools experienced overcrowding in the past, the MTPS Closure Presentation—again, of unknown origin—reasons: "[t]he data above demonstrates that Thompson Middle School has successfully accommodated a student population consistently in the 900's for several years. Thorne Middle School is the exact same structure, therefore it is reasonable to conclude that it can also accommodate a comparable number of students." *Id.*

265. MTPS's reasoning is fatally flawed.

266. At the outset, the presentation fails to identify what metric it examined to determine "success[]."

267. Did MTPS look at student performance? HIB issues? Student feedback? Parent feedback? Staff feedback? Student safety incidents? Mental health outcomes? The public has no way of knowing because the presentation's author is unknown.

268. All we know for sure is that Haber didn't prepare the slide deck.

269. More importantly, the sheer fact that these structures experienced overcrowding in the past doesn't mean that MTPS should tolerate or create those conditions in the future.

270. Under MTPS's theory, the students who attended *Abbott* districts should have remained in their dilapidated and overcrowded schools because their predecessors had experienced those conditions in the past. *Abbott by Abbott v. Burke*, 153 N.J. 480, 519 (1998) ("children in Abbott districts must also contend with gross overcrowding").

271. Such logic is devoid of any moral or rational currency and it's abominable that the Aveta Five and Superintendent Alfone embraced it.

272. Even Weinstein admitted—after the vote—that overcrowding will be an issue.

273. On or about March 1, 2026, Weinstein acknowledged in an e-mail to a parent that she also had concerns about overcapacity.

274. If so, Weinstein had no business voting "yes" in light of what the regulation requires.

275. MTPS cannot show their ill-fated decision to close schools will avoid overcrowding.

276. MTPS also cannot show that temporary facilities will be unnecessary.

277. At the meeting on February 26, 2026, Torres specifically pointed out the fact that the administration had failed to consider whether temporary facilities, including trailers, would be necessary if schools were closed.

278. When Tobacco tried to blunt the criticism by asking Superintendent Alfone about whether trailers would be necessary, Superintendent Alfone declined to respond, apparently because she doesn't know (or because the answer is damaging to her agenda).

279. Nonetheless, the Aveta Five voted in favor of school closures without this information, confirming once again that the vote had nothing to do with the data and facts.

280. Moreover, and as explained in Count I, *supra*, the Aveta Five's school closure plan results in unlawful segregation by locking predominantly minority and lower income students into a feeder pattern that sends them through the North Network, even though more than 100 of those students would have otherwise been able to access High School South.

281. The disparate racial and socioeconomic impact is appreciable.

282. Nothing in any of the documents Haber prepared measures this impact.

283. In fact, the closest Haber comes to discussing race is when he shows the existing demographic breakdown of students at MTPS and the Township as a whole (for 2019 and 2024) in one of the earlier drafts of the Haber Rezoning Presentation. *See Draft of Haber Rezoning Presentation, January 20, 2026*, Exhibit Q.

284. But this was in the context of the proposal to shift 119 students to different schools, not the proposal to close schools.

285. Thus, MTPS cannot demonstrate that its closure plan will avoid segregation in the schools.

286. It wholly and totally failed to even consider this information.

287. Petitioners have been injured as a result of MTPS's failure to comply with N.J.A.C. § 6A:26-7.5.

## Count III: Violation Of MTPS Policy 7113.1

288. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

289. MTPS Policy 7113.1 also governs school closures and incorporates the requirements set forth in N.J.A.C. § 6A:26–7.5(a).

290. Thus, MTPS's violations of the requirements set forth in N.J.A.C. § 6A:26–7.5(a), *see* Count II, *supra*, also violate Policy 7113.1 for those same reasons.

291. But there are also violations of Policy 7113.1 that are independent of the requirements in N.J.A.C. § 6A:26–7.5(a).

292. Specifically, Policy 7113.1 also sets forth a data-gathering and deliberation requirement:

> The board will not commit itself to the closing of any school facility without first having collected and considered appropriate information regarding ***student enrollments, the educational adequacy of school facilities, relevant safety and traffic factors, district revenues, and alternative district organizational plans***. The board will invite citizen participation in the analysis of that information and the formulation of recommendations. Information on any proposed district reorganization will be disseminated to the public, and public response will be invited by all appropriate means. [Policy 7113.1, attached as Exhibit R (emphasis added)]

293. MTPS wholly failed to comply with this requirement.

294. The MTPS failed to collect any data on the relevant safety and traffic factors.

295. There was no traffic study.

296. There was also no school safety study.

297. And that's because such studies would show that the school closure plan makes the district's children more vulnerable to physical harm.

298. Take but one example: students at Bayshore Middle School—primarily aged 11 to 13— currently must cross a busy street to access fields for gym class.

299. Even if MTPS converts the Bayshore Middle School building to make it appropriate for elementary-aged students, it can't magically transport the fields on to its side of the road.

300. The result is that the elementary-aged student population will now be forced to travel across the street to access the field for recess.

301. Despite what Tobacco may believe, this is not a legally or morally acceptable plan even if MTPS "ha[s] insurance." (4:52:18-4:52:22).[11]

302. Similarly, and as pointed out above, MTPS didn't consider whether the overcrowded middle schools would now be forced to place students in trailers which, as Torres pointed out, makes them more vulnerable in active shooter situations.

303. Superintendent Alfone provided no information or assurances about trailers.

304. Thus, the MTPS failed to appropriately consider whether temporary trailers would be necessary to alleviate admitted overcrowding.

305. Similarly, MTPS failed to gather "appropriate information" regarding the educational adequacy of its facilities.

306. As Haber admitted during the public Board meeting on February 19, 2026, he never looked at how the plan to close schools would impact student outcomes.

307. Moreover, Haber has no idea what type of educational facilities the new "Bayshore Elementary School" will provide.

---

[11] The video from the February 26, 2026 meeting is available here: MTPS Board of Education February Voting Meeting (02.26.26) (last visited on March 1, 2026).

308. There have been no renderings or architectural plans or studies submitted—not even by any of the PAC's donors.

309. Also, as explained above, MTPS's conclusion that Thompson Middle School and Thorne Middle School can "successfully" operate at overcapacity is based on nothing.

310. "[A]vailable research finds that students in overcrowded schools and classrooms achieve less well than students in uncrowded settings" and "studies comparing crowded schools to schools that are not filled with more students than they are designed to accommodate find differences in test scores as well as increased rates of teacher and student absenteeism." Jeannie Oakes, *Education Inadequacy, Inequality, and Failed State Policy: A Synthesis of Expert Reports Prepared for Williams v. State of California*, 43 SANTA CLARA L. REV. 1305, 1315 (2003).

311. The fact that MTPS opined that students in overcrowded schools will be fine because the schools were overcrowded in the past, *see MTPS Closure Presentation*, *7, Exhibit M, is an opinion at war with logic and common sense.

312. Finally, MTPS didn't make any good faith attempt to consider "alternative district organizational plans."

313. Haber's findings were absolute shams.

314. Doherty's e-mail from April 2, 2025, makes clear that the proposal to hire Haber and spend $24k+ was for no purpose other than to "lend support to ***our planning***." *E-mail Between Doherty And Alfone, dated April 3, 2025*, Exhibit F (emphasis added).

315. In April 2025, MTPS was publicly projecting that it had no plan and would examine the data to find a long-term plan to place the district on a path towards long-term sustainability.

316. Yet Doherty's e-mail tells a different story and reveals what was happening behind closed doors.

317. Try as she might to spin it under oath later, Doherty's failed attempt to redact this one sentence in a thread of e-mails she released speaks loudly to MTPS's motive.

318. That motive became crystal clear 10 months later when Haber came forward with his Rezoning Presentation.

319. After Haber presented it to the public on January 27, 2026, Doherty demanded that he put forth a plan "related to ***the objective of closing two schools***[.]" *See E-mail from Doherty to Haber and Ammon, dated February 2, 2026*, Exhibit K.

320. That led to the Haber Closure Report and MTPS Closure Presentation.

321. But the author of those documents remains a mystery because Haber admitted he didn't conduct the so-called "study" on school closings and was only repeating "what he read in the study beforehand." (15:37-16:05)[12].

322. Haber didn't provide a bona fide expert opinion, he provided advocacy and cover for an agenda that was set in the spring of 2025 (if not earlier).

323. MTPS never made any good-faith effort to try and consider alternatives to school closings as required by Policy 7113.1

324. The Petitioners have been harmed as a result.

[12] The video from the February 19, 2026 meeting is available here: MTPS Board of Education February Workshop Meeting (02.19.26) (last visited on March 1, 2026).

## Count IV: Violation Of The Open Public Meetings Act, N.J.S.A. § 10:4-12 (Exceeding The Scope Of Executive Session)

325. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

326. The Open Public Meetings Act ("OPMA"), N.J.S.A. § 10:4-12 provides that "all meetings of public bodies shall be open to the public at all times."

327. OPMA recognizes an exception to this rule that allows a public body to retire to executive session for the matters specifically enumerated within the statute.

328. A public body cannot discuss matters in closed session that only "'indirectly relate' to subjects that are properly the subject of a closed meeting," as doing so would "eviscerate the statute and run[] counter to our mandate to construe the statute in such a manner as to maximize public participation." *McGovern v. Rutgers*, 211 N.J. 94, 113 (2012).

329. MTPS violated OPMA on both February 19, 2026 and February 26, 2026, by exceeding the scope of its basis for retiring to Executive Session.

330. During both of those meetings, the Board went into Executive Session shortly after commencing the meeting to discuss statutorily-mandated confidential matters, personnel matters, and collective bargaining matters. *See Executive Session Resolution, February 19, 2026*, Exhibit L; *Executive Session Resolution, February 26, 2026*, Exhibit O.

331. But during both of those meetings, the Board discussed school closures.

332. On February 19, 2026, Minnuies admitted that the Board met with Haber in Executive Session to discuss school closures. (18:14 and 18:40)[13].

333. Similarly, during the February 26, 2026 meeting—and after President Aveta flat out lied to a resident and denied discussing school closures in Executive Session—Soporowski came clean, "that's a lie, we did...we sure did." (5:42:42-50) [14].

334. There is no statutorily-enumerated basis under the OPMA that allows such discussions in closed session.

335. "[S]ecrecy in public affairs undermines the faith of the public in government and the public's effectiveness in fulfilling its role in a democratic society[.]" N.J.S.A. 10:4-7.

336. The Board's decision to hold these discussions outside the public realm violates OPMA and all actions—including the passage of the Closure Resolution—should be voided accordingly.

---

[13] The video from the February 19, 2026 meeting is available here: MTPS Board of Education February Workshop Meeting (02.19.26) (last visited on March 1, 2026).
[14] The video from the February 26, 2026 meeting is available here: MTPS Board of Education February Voting Meeting (02.26.26) (last visited on March 1, 2026).

## Count V: Violation Of The Open Public Meetings Act, N.J.S.A. § 10:4-12 (Inadequate Notice)

337. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

338. The OPMA "insure[s] the right of its citizens to have adequate advance notice of . . . all meetings of public bodies at which any business affecting the public is discussed or acted upon in any way . . . ." N.J.S.A. § 10:4-7.

339. "[I]f it can be shown that the omission in an agenda for a regular meeting was intentional and was designed to deceive the public, a statutory violation thereby arises." *Crifasi v. Governing Body of Borough of Oakland*, 156 N.J. Super. 182, 187 (App. Div. 1978).

340. MTPS violated OPMA by misleading the public about its intent to vote on school closures at the February 26, 2026 meeting.

341. In fact, just two days prior, Soporowski had informed the public, via social media, that no such vote was planned.

342. Then, after returning from Executive Session on February 26, 2026, the Board moved to amend the agenda to include a vote on school closures and publicly claimed that the decision to vote was not premeditated.

343. But all the indicia suggest otherwise.

344. The Closure Resolution is a five-page, typed document that was prepared well in advance of the meeting.

345. It behooves common sense to believe that this resolution manifested from thin air and that nobody had any indication such a vote was taking place.

346. In addition, Skalaski read a typewritten statement that was several minutes-long after voting "yes" on closures—signifying that she knew the vote on closures was forthcoming.

347. Thus, the MTPS misled the public by withholding its intent to vote on a resolution that has a monumental impact on school children.

348. The MTPS violated the OPMA.

**Count VI: Referral To The Office Of Fiscal Accountability And Compliance**

349. Petitioners hereby re-allege their prior allegations and incorporate them as if they were fully set forth herein.

350. MTPS paid Haber $7500 in February 2025, which is even before some Board members knew the district had retained him.

351. This payment was made without any contract or other authorization.

352. In contrast, when Haber was retained in April 2025, he submitted a written proposal to Doherty that outlined his scope of work.

353. Even worse, there's no sign of any deliverable associated with the February 2025 payment.

354. In addition, the Haber reports and presentations were a sham aimed at supporting a preconceived school closure plan.

355. When Haber initially came up with the flawed rezoning idea, Doherty demanded that he rewrite the report to support "the objective of closing two schools," *E-mail from Doherty to Haber and Ammon, dated February 2, 2026*, Exhibit K.

356. The Haber Closure Report then appeared under the guise that Haber prepared them.

357. But he didn't.

358. As Haber admitted at the February 19, 2026 meeting, "[he] didn't do that report." (19:39-19:42).[15]

359. That raises the question of who wrote the report.

360. If the report was prepared by the MTPS administration, and it was pawned off as Haber's work product to simply mislead the public, then paying Haber's fee for this additional report was a gross misuse of public resources, including State aid.

361. Such a payment would be nothing more than compensation for misleading the public into believing an outside consultant had generated findings and a recommendation, when all such work was done in-house. That is not a bona fide use of public money.

362. This conduct deserves to be investigated, as it injuries Petitioners and the public at-large.

## Prayer for Relief

363. Petitioners hereby pray that the Commissioner enter an **ORDER**:

a. Voiding the Closure Resolution;

b. Directing the MTPS to keep open all current schools, including Leonardo Elementary School, Navesink Elementary School, and Bayshore Middle School, through the 2026-27 school year;

c. Enjoining MTPS from embarking on any other actions directed towards school closures until MTPS selects a new superintendent;

d. Enjoining MTPS from any future actions to close schools unless they first comply with all applicable laws, including but not limited to N.J.A.C. § 6A:26-7.5 and Policy 7113.1;

e. Directing the MTPS to allow members of the public to question consultants who prepare reports or documents supporting rezoning or closing schools;

[15] The video from the February 19, 2026 meeting is available here: MTPS Board of Education February Workshop Meeting (02.19.26) (last visited on March 1, 2026).

f. Directing the MTPS to explicitly disclose on its agenda any future votes to close schools;

g. Enjoining MTPS from violating the Open Public Meetings Act by discussing school closures in Executive Session;

h. Directing the Office of Fiscal Accountability and Compliance to investigate MTPS's use of public funds, including but not limited to payments made to Ross Haber Associates;

i. Granting all other relief as may be just and equitable, including reasonable attorney fees and costs.

**SHAH LAW GROUP, LLC**
*Attorneys for Petitioners Kristin Rooney, Scott McPherson, Emilie Donohue, Jessica Donohue, Melissa Daus, Megan Daus, and Katherine Young*

Dated: March 4, 2026

By: */s/Roshan D. Shah*
Roshan D. Shah, Esq.

## VERIFICATION

Kristin Rooney, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief; and

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Kristin Rooney

## VERIFICATION

Scott McPherson, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief.

Scott McPherson

**VERIFICATION**

Jessica Donohue, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief;

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Jessica Donohue

**VERIFICATION**

Emilie Donohue, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief; and

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Emilie Donohue

**VERIFICATION**

Melissa Daus, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief; and

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Melissa Daus

# VERIFICATION

Megan Daus, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief; and

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Megan Daus

**VERIFICATION**

Kathleen Young, of full age, hereby certifies that:

1) I am the Petitioner in the foregoing matter;

2) I have read the Petition and aver that the facts contained therein are true to the best of my knowledge and belief; and

3) I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Kathleen Young

# EXHIBIT I

EXHIBIT
I

# Middletown Township Board of Education

P.O. Box 4170, Middletown, NJ 07748

Board of Education Meetings

## 2026 Board of Education Meeting Dates

**Location of Board Meetings:**

Middletown High School North

63 Tindall Road, Middletown, NJ 07748

**Public Meeting follows the 7:00 p.m. Closed Session (Estimated 7:30 p.m.)**

| Month / Meeting | Meeting Date |
|---|---|
| BOE Reorganization Meeting | Tuesday, January 6, 2026 |
| January Workshop Meeting | Thursday January 22, 2026 |
| January Voting Meeting | Tuesday January 27, 2026 |
| February Workshop | Thursday, February 19, 2026 |
| February Voting Meeting **(date changed)** | Thursday, February 26, 2026 |
| March Workshop / Voting Meeting (Tentative Budget) **(date changed)** | Tuesday, March 24, 2026 |
| April Workshop Meeting | Tuesday, April 21, 2026 |
| April Voting Meeting (Budget Public Hearing) | Tuesday, April 28, 2026 |
| May Special Voting Meeting (Rehire) | Tuesday, May 12, 2026 |
| May Workshop / Voting Meeting | Tuesday, May 19, 2026 |
| June Workshop / Voting Meeting | Tuesday, June 23, 2026 |
| July Workshop / Voting Meeting | Tuesday, July 21, 2026 |
| August Workshop / Voting Meeting | Tuesday, August 25, 2026 |
| September Workshop / Voting Meeting | Tuesday, September 29, 2026 |
| October Workshop / Voting Meeting | Tuesday, October 27, 2026 |
| November Workshop / Voting Meeting | Tuesday, November 24, 2026 |
| December Workshop / Voting Meeting | Tuesday, December 15, 2026 |
| BOE Reorganization Meeting | Tuesday, January 5, 2027 |

*Approved: January 6, 2026. Rev. 1.27.26, 2.23.26, 3.10.26*